CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant, vs. RAILROAD COMMISSION OF WISCONSIN, Respondent.

*February 8—April 3, 1918.*

*Railroads: Closing of grade crossings: Furnishing new crossings: Vacation of parts of streets: Delegation of power to railroad commission: Damages, how assessed and for what: Constitutional law: Eminent domain.*

1. Secs. 1797—12e, 1797—12f, Stats. 1915, authorizing the railroad commission to order the "closing of a highway crossing and the substitution of another therefor not at grade," does not require the furnishing of a separate new crossing not at grade in place of each grade crossing closed, but contemplates that one reasonably convenient crossing not at grade may take the place of several near-by grade crossings.

2. The power of the state to vacate parts of streets may be delegated to the railroad commission, and may be exercised by said commission in carrying out the purposes of secs. 1797—12e, 1797—12f, Stats. 1915.

3. Where a part of a street is vacated pursuant to said statutes, the

damages are to be assessed in condemnation proceedings instituted by the railroad company under the general statutes on that subject.

4. Such damages are to be assessed only for land actually taken and for the injury to adjacent lots resulting from the change of grade in front of them. The "special damages . . . by reason of such change in the grade," provided for in sub. 2, sec. 1797—12e, do not include mere consequential damages to the owners of lots not physically affected, resulting from a vacation of a portion of the street.

5. Sec. 13, art. I, Const., requiring compensation to be made for property taken for public use, does not, when a part only of a street is vacated, require compensation for a depreciation in lots not adjacent to such part by reason of the resulting circuity of approach or reduction of travel and traffic on the street. *Johnston v. Lonstorf,* 128 Wis. 17, overruled on this point; *Tilly v. Mitchell & Lewis Co.* 121 Wis. 1, distinguished.

APPEAL from an order of the circuit court for Dane county: John J. Gregory, Judge.  *Affirmed.*

The appeal is from an order sustaining a demurrer to the complaint.   The action was brought in equity to vacate and enjoin the enforcement of an order of the *Railroad Commission* ordering separation of the grades of the streets and of the plaintiff's tracks for a distance of more than two miles, extending from Chicago avenue in the city of Milwaukee westward through portions of the towns of Lake and Greenfield, closing certain of such streets, providing for crossings not at grade at the other streets, and distributing the work between the railway company, the city of Milwaukee, and the towns of Lake and Greenfield.   The plaintiff claimed that the order was void because (1) it assumed to close and vacate streets and highways which the *Railroad Commission* has no power to do, and (2) the *Commission,* in closing a crossing at grade and substituting for this a crossing not at grade, must provide a separate new crossing not at grade for *each* existing grade crossing so closed, and cannot legally substitute one new crossing not at grade for several existing crossings at grade.   The case having been argued and taken under

advisement, a reargument was ordered and had upon four specific questions, viz.:

(1) Is the *Railroad Commission* empowered by sec. 1797—12e *et seq.* to wholly vacate street crossings, creating no new crossings in place thereof but compelling the use of other crossings already existing on other streets; or is it empowered only to change the location or grade of crossings, furnishing another crossing in place of each one so changed?

(2) If it has power to wholly vacate crossings, as had been done in the present case, is there any authority or duty on the part of the *Commission* or any other body to assess and pay the damages sustained by lotowners on the street who are specially damaged by the vacation?

(3) Can there be a valid vacation of a part of a street without the assessment and payment of damages to lotowners on the street who are specially damaged by the vacation (see *Tilly v. Mitchell & Lewis Co.* 121 Wis. 1, 98 N. W. 969, and *Johnston v. Lonstorf,* 128 Wis. 17, 107 N. W. 459)?

(4) If the *Commission* had not the power to wholly vacate crossings, as had been done here, must there be vacation of the crossings by the city or town authorities before the *Commission* orders the improvement, or can the improvement be ordered and made dependent on the subsequent vacation of the streets by the proper authorities?

*R. N. Van Doren* of Milwaukee, for the appellant.

For the respondent there was a brief by *W. C. Owen,* attorney general, and *Walter Drew,* deputy attorney general, and oral argument by *Spencer Haven,* attorney general.

WINSLOW, C. J.   The order of the *Railroad Commission* which is attacked in this action was made upon the supposed authority of secs. 1797—12e and 1797—12f, Stats. 1915, which read as follows:

"*Railroad   highway   crossings.*   Section   1797—12e. 1. Whenever a petition is lodged with the commission by

the common council of any city, the village board of any village, the town board of any town, the county board of supervisors of any county, within or bordering upon which a highway or street crosses, or is crossed by a railroad, or within or bordering upon which a highway or street is proposed to be laid out across a railroad, or whenever such petition is so lodged by any railroad company whose track crosses or is about to cross, or is crossed, or about to be crossed by a street or highway, to the effect that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, the closing of a highway crossing, and the substitution of another therefor, not at a grade, or the removal of obstructions to the view at such crossing, or requires the determination of the mode and manner of making such new crossing, and praying that the same may be ordered, it shall be the duty of the commission to give notice to the proper party or parties in interest other than the petitioner, of the filing of such petition, and to proceed to investigate the same and to order a hearing thereon in the manner provided for hearings in section 1797—12, and after such hearing the commission shall determine what alteration in such crossing, approaches, mode of crossing, location of highway crossing, closing of highway crossing, and the substitution of another therefor not at grade, or removal of obstructions to sight at crossing, if any, shall be made, and by whom made, and in case of new crossings the mode and manner of making them.

"2. The commission shall fix the proportion of the cost and expense of such alteration, removals, and new crossings, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public street or highway shall sustain by reason of such change in the grade of such street or highway, or by reason of the removal of obstructions to view at such crossings, to be paid by the railroad company or companies, and the municipality or municipalities in interest. In fixing such proportion the commission may order the amount of such cost and expense and damages so apportioned to be paid by the parties against which the apportionment shall be made.

"3. Whenever the commission shall have ordered or shall hereafter order a separation of the grade of a railway from

the grade of a street or highway in any city, it may, if safe and practicable, and if a necessity exists therefor, order the alteration, restoration and connection of any track serving an industry or industries. Demand for such restoration shall be in writing and filed with the commission within ninety days after the date of the order for the separation of grades or the taking effect of this act, and any such track for which no such demand shall have been made shall be deemed abandoned. If the commission shall order the alteration, restoration and connection of any such track, it shall by its order apportion the cost thereof between the person or persons owning the industry or industries served by such track, the railway company, and the municipality in which said track is located, when in the opinion of the commission such municipality is benefited, or any of them in such proportion as to the commission may seem just and equitable; and the commission shall in its order prescribe the terms and conditions for securing the payment of such cost. The foregoing provision for the alteration, restoration and connection of any such track serving an industry or industries, shall apply to any order of the commission heretofore made, under which order work has not been completed at the time of the passage of this act; provided, that demand therefor is made within ninety days after the passage of this act. The provisions of this subsection are not intended to and shall not affect in any manner pending litigation.

"*Commission's initiative power.* Section 1797—12*f*. The commission may, in the absence of any petition therefor, when in its opinion public safety requires an alteration in any street or highway crossed at grade by any railroad, or railroad belonging to or operated by more than one company, or any change or alteration in such crossing, approaches thereto, mode of crossing, location of highway crossing, closing of highway crossing or removal of obstructions to the sight or view at such crossing, after notice and hearing as provided in section 1797—12, order such alterations in such street, highway, railroad, crossing, approaches to crossing, mode of crossing, location of highway crossing, and may order the closing of such highway crossing and substitute another therefor at grade or not at grade as shall be deemed best by the commission, and said commission shall determine and di-

rect by whom and within what time such changes, improvements and alterations shall be made, and the expense of such alterations, changes and improvements shall be apportioned and paid as provided in the preceding section. Railroad companies may take land for the purpose of this section and the preceding section in the manner provided by law for the taking of land by railroad companies."

The order in question is long and deals with many streets and crossings. It does not seem necessary to attempt to state its contents in detail. The questions raised may be stated and discussed abstractly just as well as concretely, and those questions are as follows:

(1) Does the law require the furnishing of a separate new crossing not at grade in place of each grade crossing closed, or does it contemplate that one reasonably convenient crossing not at grade may take the place of several near-by grade crossings?

(2) If the latter, then, can such power (*i. e.* the power to wholly vacate a part of a street) be legally vested in the *Railroad Commission?*

(3) How are the damages to be assessed and by whom paid?

(4) Does the law provide for the payment of damages to the owners of lots not fronting on or adjacent to the vacated portion of a street or the portion where the grade is changed, but which are injured in value by reason of the fact that the route to them is made longer or more inconvenient?

(5) If there be no such provision, can the law be sustained?

These questions will be considered in the order indicated.

1. In considering the first question it must be at once admitted that the language of the act is not as clear as might be desired. Sec. 1797—12e enumerates among the things which may be done by the *Commission* "the closing of a highway crossing and the substitution of another therefor not at grade." It is said that this plainly means the furnishing of

a separate new crossing for each grade crossing closed, and certainly the language used naturally bears that construction. It is susceptible, however, of a broader construction, and the broader construction should be given to it if that be necessary to accomplish the purpose of the law. Now the paramount purpose of the law plainly is the preservation of human life and limb from the terrible dangers which lurk about the grade crossing, and these dangers are the greatest in great cities. No construction should be given to it which would tend to defeat or impair its beneficent purpose. We suppose it to be matter of common knowledge that where tracks are elevated in the larger cities of the country it has not been deemed necessary or desirable that every cross street should be carried over or under the railroad track, especially where the cross streets are only three or four hundred feet apart; a crossing every three or four blocks is the general rule in such situations; indeed it might well be that to insist on an elevated or depressed crossing at every cross street would in many cases be so expensive as to be practically prohibitive. Again, it is quite evident that the general public interest may often, if not always, be promoted by having a few elevated or depressed crossings rather than many, by reason of the lesser expense of maintenance; furthermore, where a single elevated or depressed crossing has been furnished in place of several grade crossings and constitutes a reasonably convenient substitute for each of them, it seems entirely correct to say that there has been, in the case of each highway, the "closing of a highway crossing and the substitution of another therefor."

In consideration of the purposes of the act and the possible results of a very strict construction, we have no difficulty in construing it as thus indicated.

2. Upon the second question there seems to be no serious difficulty. The power to vacate a street is a power belonging to the state, vested primarily in the legislature. It may be

delegated to any appropriate agency of the state, and when that agency acts the state acts. *Fearing v. Irwin,* 55 N. Y. 486; *Brook v. Horten,* 68 Cal. 554, 10 Pac. 204. The *Railroad Commission* is certainly an appropriate administrative body to be chosen for the exercise of this power in such cases as the present.

3. Upon the third question it seems reasonably clear to our minds that the law contemplates that the damages are to be assessed in condemnation proceedings under the general statutes covering condemnation of land by railway companies. The first clause of sub. 2 of sec. 1797—12e demonstrates that the lawmakers had the subject of the assessment and payment of the damages in mind, while the closing sentence of sec. 1797—12f just as clearly shows that condemnation proceedings by the railroad were intended to provide the means to accomplish the end. It is settled in this state that the changing of the grade of a street adjacent to a lot for the purpose of permitting the street to go over or under a railroad track is a taking of property, *i. e.* real estate, for railroad purposes, for which compensation must be made in condemnation proceedings. *Eisler v. C., M. & St. P. R. Co.* 163 Wis. 86, 157 N. W. 534; *Pabst B. Co. v. Milwaukee,* 157 Wis. 158, 147 N. W. 46. The intention of the law clearly is that the railroad company shall institute condemnation proceedings in which all the damages are to be assessed for land actually taken and for damages suffered by adjacent lotowners resulting from the change of grade in front of their lots, this latter being considered a taking of land within the meaning of the condemnation statute. Of course under the provisions of sub. 2 of sec. 1797—12e the *Railroad Commission* must fix the proportion of the damages so assessed to be ultimately paid by the railroad company and the municipalities respectively, but the condemnation proceedings are to be carried through by the railroad company under the condemnation statute.

4. The fourth question must be answered in the negative. The damages provided for by the statute (so far as necessary to be considered here) are "damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public street . . . shall sustain *by reason of such* change in the grade of such street or highway."

The word "special" is not happily used here, for it might easily be construed as referring to remote and consequential damages resulting to lots not in any way physically affected by the work but only suffering a loss in value because they must be reached in a roundabout way; but when we consider the fact that the "special" damages referred to are such only as are sustained "by reason of such change in the grade," it seems that the word cannot refer to mere consequential damages resulting from the vacation of a portion of a street.

We cannot doubt that when the legislature provided for the payment of damages resulting from a change of grade, and in the same act required the railroad company to acquire the property necessary to carry out the provisions of the order by condemnation proceedings, they had in mind the rule of the *Pabst* and *Eisler Cases* and intended to cover by the language used the elements covered in those cases and no more. Clearly the consequential damages suffered by a lotowner whose lot has only lost some of its business or residence value because by the vacation of the street crossing it is not so readily to be reached, cannot be said to have suffered damage from the change of the grade of another street which may be two or three blocks away. The act nowhere recognizes or refers to damages resulting to a lot from the mere vacation of a section of the street to which section the lot is not adjacent.

5. Here we are brought face to face with the decision of this court in the case of *Johnston v. Lonstorf,* 128 Wis. 17, 107 N. W. 459, where it was strongly intimated, if not squarely held, that a statute was invalid which authorized the vacation of a part of a street or alley without first com-

pensating the abutting lotowners, "though their lots may not abut upon the portion so vacated." If this be good law, then it would seem that the act in question cannot be sustained, for, as we construe it, there is no provision in it for the assessment or payment of such damages. Examination of the record in the *Lonstorf Case* shows that the lot in question in that case abutted on the very portion of the alley vacated, hence the question whether damages should or must be awarded to lotowners whose lots do *not* abut on the vacated portion was not in the case and the statement made with reference to such lots was purely *obiter*. But even though it be *obiter* we should not wish to overrule it lightly nor unless well satisfied that it is wrong. Examination of the authorities, however, convinces us that both the reason and weight of authority is the other way in states where (as in Wisconsin) the constitutional requirement is simply that compensation shall be made for property *taken* for public use and not that mere damage to property shall be compensated for. Const. art. I, sec. 13.

The right of access to a lot from the adjacent street is clearly a property right, and, when it is destroyed by vacation of that part of the street to which the lot is adjacent, property is taken which must be paid for. A law which attempts to take away such a property right without compensation cannot be sustained. The law under consideration clearly does provide for compensation for such property rights when (as we construe it) it requires the railroad company to prosecute condemnation proceedings for the purpose of carrying out the provisions of the sections. It does not, however, provide for compensation to lotowners whose lots are not adjacent to the portion of the street vacated, and who consequently have not lost the property right of access, but have been damaged solely because their property has become less valuable for residence or business purposes by reason of the

resulting circuity of approach or reduction of travel and traffic on the street. While the authorities are not unanimous, the great weight of authority is to the effect that the constitutional requirement that compensation be made for property taken for public use does not apply to such damages. In the absence of specific provisions of law requiring their assessment and payment, they are *damnum absque injuria.* *Nichols v. Richmond,* 162 Mass. 170, 38 N. E. 501; 1 Lewis, Em. Dom. (3d ed.) §§ 202 and 206, and cases cited in note 9 to the latter section; 2 Elliott, Roads & Streets (3d ed.) § 1181 and cases cited. As said in the *Nichols Case,* the line must be drawn somewhere on practical grounds. If every lotowner who suffers inconvenience by reason of circuity of approach could demand his damages before a distant portion of the street could be legally vacated, the difficulties in the way of vacation would be very great, for in many cases what might be called the damage zone would extend almost indefinitely in several directions. The case of *Tilly v. Mitchell & Lewis Co.* 121 Wis. 1, 98 N. W. 969, does not in any way conflict with this holding. That was a case where there was an absolutely unlawful attempt to vacate a part of the street, and it was held that a lotowner whose lot fronted on another part of the street but was depreciated in value by the proposed vacation might maintain an action in equity to restrain the threatened unlawful closing of the street. Manifestly the proposition laid down in that case does not decide this case, nor has it any necessary bearing thereon.

These considerations call for affirmance of the order appealed from.

*By the Court.*—Order affirmed.

Owen, J., took no part.