STEFAN AUTO BODY, Appellant, v. STATE HIGHWAY COMMISSION, Respondent.

*October 3—November 1, 1963.*

For the appellant there was a brief and oral argument by *Clayton A. Cramer* of Waukesha.

For the respondent the cause was argued by *A. J. Feifarek*, assistant attorney general, with whom on the brief was *George Thompson*, attorney general.

HALLOWS, J.   This case presents the issue of whether an abutting property owner is entitled to compensation when direct access to the highway which becomes an access-free highway is replaced by a *cul-de-sac* frontage road which affords access at interchanges.  The defendant argues such damage is not compensable because it results from a reasonable exercise of the police power in establishing the highway as a part of the national system of interstate highways.  The plaintiff's position on this appeal is that the *cul-de-sac* does not give it reasonable access to the express lanes of the highway and the loss of direct access results in a "taking" of its property in a constitutional sense, for which compensation must be paid.

Preliminarily, the plaintiff additionally argues the question of reasonable access is an issue of a material fact which defeats the motion for summary judgment.  In some cases this may be so,[1] but we think not in this case because, in view of the nature of the damages complained of, any access less than direct access will cause the plaintiff some damage.  The question is not the amount of damage but whether any damage suffered by the plaintiff by being placed on the frontage road is compensable.  This is a question of law and depends upon the nature and the scope of the right of access.  If the plaintiff as an abutting property owner has

[1] See *Iowa State Highway Comm. v. Smith* (1957), 248 Iowa 869, 82 N. W. (2d) 755.

a right of direct access to the highway and to the flow of traffic thereon so the traveling public may enter and leave the plaintiff's place of business directly from the public highway and the right includes the right to profit from the highest or current use of the property, then we would have a remaining fact question of the amount of damages for the taking.

In considering the nature of the abutter's right of access, the nature of loss suffered, and the nature of a frontage road involved in the problem of whether a frontage-road abutter should be compensated for the loss of direct access to a freeway, the courts have come to three different conclusions: (a) Any loss should be compensated and the existence of the frontage road considered in mitigation of the loss, (b) the loss should be compensated only when accompanied by a taking of the land by eminent domain, and (c) any loss resulting from being placed on the frontage road should not be compensated.[2] Those states which deny relief reason the right of access is not absolute and not restricted to direct ingress and egress and the provision for indirect access to a highway by means of frontage roads is a valid exercise of the police power.[3] States which allow damages for being

[2] Covey, Frontage Roads: To Compensate or Not to Compensate, 56 Northwestern University Law Review (1961), 587.

[3] *Arkansas State Highway Comm. v. Bingham* (1960), 231 Ark. 934, 940, 333 S. W. (2d) 728—Access to frontage road but not to Interstate Highway where formerly there was uncontrolled access to highway ". . . private enterprise must yield to the public welfare and convenience." *Selig v. State* (1961), 10 N. Y. (2d) 34, 39, 217 N. Y. Supp. (2d) 33, 176 N. E. (2d) 59—Property owner not entitled to damages for loss of access when throughway was constructed, with change of grade, on street to which he formerly had access, leaving him access at former grade to a one-way service road. "Damages resulting merely from circuity of access are considered as *dammum absque injuria.*" *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 126 N. E. (2d) 53. *Darnall v. State* (S. D. 1961), 108 N. W. (2d) 291—Gas station formerly on highway now on frontage road with access one and one-half miles each way, ap-

placed on a frontage road do so on the theory the right of access is a property right of direct access to the road including all the benefits which such proximity involves and when these benefits are impaired because the direct access is converted into an indirect access, there is a taking or damaging which requires compensation.[4] It would seem from the few authorities a *cul-de-sac* frontage road is more likely to be considered an unreasonable substitute than a frontage road which connects with two interchanges.[5]

The conflict in the decisions ultimately rests in the different views of the nature of the right of access or what constitutes a reasonable exercise of the police power. All decisions recognize a complete denial of access to an existing road is compensable, and it is generally recognized the state under its police power may indirectly affect the abutting

plied circuity-of-travel doctrine to deny damages. *Holbrook v. State* (Tex. Civ. App. 1962), 355 S. W. (2d) 235—Circuity of travel to deny damages.

[4] *Blount County v. McPherson* (1958), 268 Ala. 133, 105 So. (2d) 117; *State v. Thelberg* (1960), 87 Ariz. 318, 350 Pac. (2d) 988; *People v. Ricciardi* (1943), 23 Cal. (2d) 390, 144 Pac. (2d) 799; *Clayton County v. Billups Eastern Petroleum Co.* (1961), 104 Ga. App. 778, 123 S. E. (2d) 187; *Hendrickson v. Minnesota* (May 3, 1963)—Constitution provides for compensation for "damaging" as well as for taking. (20 The Bench and Bar of Minnesota (July, 1963), p. 49.) *Hamilton v. Mississippi State Highway Comm.* (1961), 240 Miss. 895, 128 So. (2d) 742. *McMoran v. State* (1959), 55 Wash. (2d) 37, 345 Pac. (2d) 598.

[5] *Meloon Bronze Foundry v. State* (1959), 18 Misc. (2d) 403, 191 N. Y. Supp. (2d) 3, relied upon by appellant, held creation of *cul-de-sac* without providing reasonable means for vehicles using premises to turn around, must be compensated. On appeal, however, the appellate division, 200 N. Y. Supp. (2d) 563, modified this stating, at page 564, "The State is not required to respond in damages because claimant's property does not have direct access to [the road] as reconstructed" or is not on a through street. *People v. Sayig* (1951), 101 Cal. App. (2d) 890, 226 Pac. (2d) 702, stated property placed on *cul-de-sac* after improvement entitles owner to compensation. *Oklahoma Turnpike Authority v. Chandler* (Okla. 1957), 316 Pac. (2d) 828, stated when property is placed on *cul-de-sac* special damages have occurred and owner can be compensated.

property by such controls as the establishment of one-way streets or lanes of traffic, median strips, elimination of cross-overs, restrictions on U turns, left and right turns, and weight and speed restrictions.[6] While these limitations or restrictions may result in a diversion of traffic or in a circuity of travel, any damaging effect to abutting property is incidental. Such restrictions affect all members of the public on the highway and are primarily imposed in reference to traffic and not as a limitation on the full use of a right of access. From this premise some courts have reasoned the right of access does not include any right to the maintenance or the continuance of the flow of traffic past the abutting property and the diversion of traffic is not a taking of a property right.[7]

It is true the line between police power and condemnation has not been and perhaps cannot be sharply drawn. The problem is really one of degree. In both, damages may result but if the damage is such as to be suffered by many similarly situated and is in the nature of a restriction on the use to which land may be put and ought to be borne by the individual as a member of society for the good of the public safety, health, or general welfare, it is said to be a reasonable exercise of the police power, but if the damage is so great to the individual that he ought not to bear it under

[6] *Jones Beach Blvd. Estate, Inc., v. Moses* (1935), 268 N. Y. 362, 197 N. E. 313 (median); Anno. Traffic regulations which interfere with or restrict access to and from abutting property, 100 A. L. R. 491; and Anno. Power to restrict or interfere with access of abutter by traffic regulations, 73 A. L. R. (2d) 689; *Iowa State Highway Comm. v. Smith, supra,* and cases therein cited.

[7] Anno. Right of private citizen to complain of rerouting of highway or removal or change of route or directional signs, 97 A. L. R. 192; Anno. Right of property owner to compensation for diversion of traffic by relocation or rerouting of highway, 118 A. L. R. 921; But see Anno. Abutting owner's right to damages or other relief for loss of access because of limited-access highway or street, 43 A. L. R. (2d) 1072.

contemporary standards, then courts are inclined to treat it as a "taking" of the property or an unreasonable exercise of the police power. See *State v. Herwig* (1962), 17 Wis. (2d) 442, 117 N. W. (2d) 335. "The law recognizes that the owner of property, even though it be situated upon a public street, has a right of ingress and egress to and from his premises. However this right is, in common with most other rights, subject to reasonable regulations in the public interest and for the promotion of public convenience and safety. The difficulty arises when an attempt is made to determine what is reasonable and what is unreasonable." *Neenah v. Krueger* (1932), 206 Wis. 473, 476, 240 N. W. 402.

The right of access or of ingress or egress of an abutting property owner to a public road or street is a property right not separate in itself but incidental to and a part of the ownership of the land and is subject to the superior rights of the traveling public upon the highway and of the state to control that traffic for the common good. In early times, local roads were constructed for the improvement of property and in many instances the land was dedicated for such purpose and the road was paid for by local real-estate taxes or by special assessments. The concept of access rights in that context was not greatly influenced by the needs of the public generally which might clash with an unrestricted use of the property in relation to the abutting street. Covey, *supra;* Clarke, The Limited-Access Highway, 27 Washington Law Review (1952), 115. But a more-modern concept of the right of access restricts the scope and nature of the right in relation to the needs of contemporary society. Or, as it has been said, we cannot have changeless roads in a changing society. *Darnall v. State, supra.* Recent concepts of the function of highways have added to the local road and street concept limited-access highways, freeways, and expressways because of the growth of automobile traffic and

the public need for greater speed and safety. These roads are constructed to serve the today and future needs of the traveling public and the national defense objects of the federal government rather than the local needs of abutting-property owners. In *Agnew v. Hotchkiss* (1926), 189 Wis. 1, 3, 206 N. W. 849, it is stated, " 'Highways are only to be laid out when the public good will thereby be promoted. . . . The controlling factor must always be the good of the general public and not the convenience or financial gain of the people who live along any particular highway.' " Highway 30 ran the course of being an uncontrolled-access state highway to a limited-access highway and now to an integral part of the national system of interstate highways or freeways sponsored and encouraged by the federal government and paid for to the extent of 90 percent by the federal government out of taxes assessed against the users of the public highways. The purpose of Interstate Highway 94 is not to serve the traveling public or abutters as a local road but to serve as a safe, efficient, and speedy means of transporting traffic from one state to another. What the defendant did in constructing Interstate Highway 94 as a freeway was in the exercise of its police power expressly authorized by sec. 84.29, Stats.

It is argued by the defendant that as long as the plaintiff has access to the interstate highway by a system of public roads his right of access is not impaired unreasonably. This argument proceeds on the theory the abutting property owner is merely entitled to some physical access to the public highway system. In this case that is true only to the extent to which the indirect access by the frontage road to the new or existing road is considered reasonable. However, the limited-right-of-way concept finds some basis in prior decisions of this court in what is called the circuity-of-travel doctrine. This idea was advanced in the early case of *Chicago & N. W. R. Co. v. Railroad Comm.* (1918), 167 Wis.

185, 167 N. W. 266. That case involved the vacating of several streets in a city to eliminate at-grade crossings and the substitution therefor of an overhead crossing. The circuity of travel was not held to be a compensable item of damages. In *Carazalla v. State* [8] which involved a taking of land for the construction of a new highway across the plaintiff's land leaving the old highway intact to which the plaintiff had access rights, we held no compensation should be paid because the abutter's access to the new highway was circuitous. In *Nick v. State Highway Comm.* (1961), 13 Wis. (2d) 511, 109 N. W. (2d) 71, which involved Highway 30 as a limited controlled-access highway, we said, page 514, relying on a zoning case,[9] "An impairment of the use of property by the exercise of police power, where the property itself is not taken by the state, does not entitle the owner of such property to a right to compensation," and held the diminution of value of land because the access to the highway was made more circuitous was not compensable. The question of the reasonableness or the suitability of the access to Highway 30 by way of another public road abutting the property was not raised.

In the concurring opinion it was stated, page 518, "If by reason of providing a frontage road, or the existence of a previously existing connecting highway, there is reasonable access to the controlled-access highway, no taking requiring compensation should be held to have occurred." The *Nick Case* involved the police power under sec. 84.25, Stats., relating to a controlled-access highway; the instant case is concerned with sec. 84.29, relating to the national system of interstate highways. The full scope of the circuity-of-travel

---

[8] (1955), 269 Wis. 593, 70 N. W. (2d) 208, 71 N. W. (2d) 276. See Notes, Highway Condemnation—Compensation for Limited Highway Access and Diversion of Traffic, 1959 Wisconsin Law Review, 667.

[9] *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 196 N. W. 451.

doctrine, as contended for by the defendant, cannot be applied to roads involving the national system of interstate highways in Wisconsin because sec. 84.29 requires either the condemnation of access rights to the interstate highway or a frontage road leading to the interstate highway as a part thereof and not to any road of the highway system. Webster's New International Dictionary (3d ed., unabridged), defines "frontage road" as "a local street or road generally paralleling an expressway or through street on one or both of its sides to collect local traffic and provide access to property isolated from the expressway through access controls—called also *service roads*." The frontage-road access furnished the plaintiff now meets this more-limited standard.

The trial court adopted the modern concept of the nature of the right of access and did not consider the plaintiff's right of access included the right to the flow of traffic or the continuance of that traffic on the highway. We agree.

The plaintiff's loss of income and the diminution of value, of his property for use as a filling station and automobile service garage result from the characteristics of that particular use. The loss of profit results not so much from the inability of the plaintiff and its employees to reach the highway as from the inability of the public traveling on the highway to directly reach its place of business. But the control of the traffic on the highway is subject to the police power of the state. Considering the purpose of the construction of Interstate Highway 94, the nature of the access rights, that the interchanges are approximately five miles apart and served by frontage roads, we hold that reasonable access to the interstate highway was given the plaintiff. It is unfortunate the plaintiff's property lies approximately at midpoint between these interchanges.

It is urged the defendant is estopped from asserting the taking of its access rights to State Trunk Highway 30 was

under the police power and not compensable. It cannot be denied the state made the award of $15 for such rights as the plaintiff had to travel over a parcel of land previously dedicated to Waukesha county and which lay between the right-of-way of Highway 30 and the north boundary line of plaintiff's property. Since this award was made under sec. 32.09 (6) (b), Stats., relating to condemnation, the plaintiff argues the defendant made an election under the rule of *Thomas v. Waukesha* (1963), 19 Wis. (2d) 243, 120 N. W. (2d) 58, to proceed by condemnation. The record is not clear that the defendant intended to acquire all access rights of the plaintiff for $15 and leave its land either landlocked or with accessibility to County Trunk E. The defendant has provided a frontage road for access. In the absence of a taking of the plaintiff's land, the only damages claimed by the plaintiff are not compensable in this proceeding based on the inadequacy of the award. The trial court held the award was made in error but such error did not require the continuance of this action because the plaintiff could prove no compensable damages. We find no error in that ruling.

*By the Court.*—Judgment affirmed.

DIETERICH, J. (*dissenting*). I disagree with the principle of law applied by the majority in the instant action that a person, whose means of livelihood is taken away by the state in connection with the removal and construction of a new interstate highway, is precluded from recovering damages under the provisions of sec. 84.29, Stats.

It would seem to me that the first question that is presented by the undisputed facts in the action is whether the plaintiff has been deprived of his property. The United States supreme court in determining the question of whether a person has been deprived of his property rights recognizes

the principle of law that governmental action in the form of regulation may be so onerous as to constitute a taking under the constitution. *Goldblatt v. Hempstead* (1962), 369 U. S. 590, 594, 82 Sup. Ct. 987, 8 L. Ed. (2d) 130. See also *State v. Herwig* (1962), 17 Wis. (2d) 442, 447, 117 N. W. (2d) 335, where this court stated that there is a limit to the extent to which the state may restrict the use of property or damage property under the police power.

Courts have recognized that a landowner is entitled to compensation where his direct right of access is taken, even though other, but less satisfactory means of access are available. *Oklahoma Turnpike Authority v. Chandler* (Okla. 1957), 316 Pac. (2d) 828, 832; *Blount County v. McPherson* (1958), 268 Ala. 133, 135, 105 So. (2d) 117; *McMoran v. State* (1959), 55 Wash. (2d) 37, 40, 345 Pac. (2d) 598; *State v. Thelberg* (1960), 87 Ariz. 318, 324, 350 Pac. (2d) 988.

Sec. 84.29 (4), Stats., requires that, when an interstate highway is laid out along an existing public highway reasonable provisions must be made for access to abutting property by means of frontage roads. In *Iowa State Highway Comm. v. Smith* (1957), 248 Iowa 869, 877, 82 N. W. (2d) 755, 760, the Iowa supreme court stated that the question of whether an abutting property owner has been denied reasonable access to a controlled-access highway is a question of fact, not of law. The Iowa court also held that the public cannot deprive abutting landowners from free and convenient access to their properties without just compensation.

Highway 30, prior to the construction of the new Interstate Highway 94, was a part of the state trunk intrastate highway system. The plaintiff's access rights to Highway 30 in the instant action existed without any prior permit being required, and he established a business which is totally dependent upon some highway traffic. Termination of any

and all public access to his place of business from a highway, and giving him instead what amounts to no more than a dead-end private driveway ending at his premises, which will require automobiles to travel from two and one-fourth to two and one-half miles off a highway to purchase service-station products, tires, and auto repairs, has the effect of putting him out of business altogether. While the state is not taking any of plaintiff's real estate, the elimination of a public highway upon which his business is dependent, deprives him of his livelihood, and in return for this, he was awarded compensation of $15. This clearly raises a substantial question of whether there has, in fact, been a taking of his property without adequate compensation, as well as a question of whether the dead-end frontage road provided by the state allows him reasonable access to the highway, which is required by sec. 84.29 (4), Stats.

As to what constitutes compensable damage within the meaning of constitutional guaranties, the rule which has received the most support in actual application is that compensation is required not only when there is an injury that would be actionable at common law, but also in all cases in which it appears that there has been some physical disturbance of a right, either public or private, which the owner of a parcel of land enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. 18 Am. Jur., Eminent Domain, p. 765, sec. 139. The Colorado court, in reversing the judgment of the trial court based upon a finding of a jury, that the owner of land adjacent to a pre-existing highway suffered no damage when his rights of access were condemned as an incident to the conversion of the highway to a freeway, held that these rights of access constituted property. The court

also held that while it might seem difficult to establish the market value of such rights, the true value could be found in the difference between the value of the land and its use for any and all purposes before the destruction of the rights, and its value thereafter. *Boxberger v. State Highway Comm.* (1952), 126 Colo. 526, 534, 535, 251 Pac. (2d) 920.

The motion for summary judgment should have been denied because substantial issues of fact and damages exist which in my opinion cannot be resolved upon affidavits.