The **TAHOE–SIERRA PRESERVATION COUNCIL, INC., a California non-profit corporation and membership organization, et al., Plaintiffs,**

v.

The **TAHOE REGIONAL PLANNING AGENCY, a separate legal entity created pursuant to an interstate Compact between the States of California and Nevada, et al., Defendants.**

No. CV–R–84–257–ECR.

United States District Court, D. Nevada.

June 6, 1986.

---

Hoffman, Lien, Faccinto & Spitzer, Lawrence L. Hoffman, Robert Damon Spitzer, Gregg R. Lien, Tahoe City, Cal., for plaintiffs.

Richard M. Frank, California Dept. of Justice, Sacramento, Cal., for State of Cal.

Maria Adams, Deputy Atty. Gen., Environmental Div., Gary A. Owen, Carson City, Nev., for Tahoe Regional Planning Agency.

## ORDER

EDWARD C. REED, Jr., District Judge.

This Court by order dated May 10, 1985,[1] granted defendants' motions to dismiss the second, fifth, sixth, and seventh[2] causes of action. We converted the remaining issues presented by defendants to summary judgment pursuant to Fed.R.Civ.P. 56 and allowed further briefing.[3] Oral hearing on the motions for summary judgment was held on March 31, 1986.

This case involves a challenge to the 1984 Regional Plan adopted by defendant Tahoe Regional Planning Agency (TRPA). Regional planning in the Lake Tahoe Basin is inherently difficult. The Basin is 500 square miles (192 square miles covered by Lake Tahoe) and covers two states and five counties. The area, because of population and topography, presents difficult environmental problems. In recognition of this, the states of Nevada and California sought to coordinate the planning effort at the Lake. In 1969 the two states adopted an interstate agreement, the Tahoe Regional Planning Compact (Compact), which was approved by Congress. Pub.L. No. 91–148,

---

1. *The Tahoe-Sierra Preservation Council, Inc. v. The Tahoe Regional Planning Agency,* 611 F.Supp. 110 (D.Nev.1985).

2. Our previous order granted defendants' motion to dismiss the seventh claim for relief as far as it sought monetary damages. The remaining claim for injunctive relief remains.

3. The briefs submitted by the parties have been extensive and found to be of the highest quality. The Court compliments all of the counsel.

83 Stat. 360 (1969); *amended* Pub.L. 96–551, 94 Stat. 3233; Calif. Govt. Code Sections 66800 and 66801; NRS §§ 277.190 and 277.200. Nevada and California extensively amended in the Compact in 1980 in recognition that "[t]he waters of Lake Tahoe and other resources of the region are threatened with deterioration or degeneration, which endangers the natural beauty and economic productivity of the region." Article I, Compact.

The 1980 amendments imposed several new and specific mandates on the TRPA. The TRPA must first adopt "environmental threshold carrying capacities for the region." Article V(b). Within one year after adoption of the environmental thresholds, the TRPA was mandated to amend the regional plan so that, at a minimum, the environmental threshold carrying capacities would be implemented. Article V(c). It is the Regional Plan, which the TRPA enacted April 26, 1984, which is the subject of this lawsuit.

Plaintiffs are the Tahoe-Sierra Preservation Council (Council) and several hundred of its members owning legally-created lots or parcels within the Lake Tahoe region, which are classified by the TRPA's Regional Plan as either Stream Environment Zone (SEZ) or land capability class 1, 2, or 3. Further allegations regarding each plaintiff's lot or parcel are set forth in appendices to the complaint.

"The gravamen of Council's complaint is that, as a result of the excessive restrictions or 'overregulations' of Council's properties imposed by provisions of the 1984 Regional Plan, defendants have 'taken' Council's properties in violation of the Fifth Amendment proscriptions against deprivation of property without due process of law and taking of property for public use without payment of just compensation." Plaintiffs' Opposition to Motions for Summary Judgment at 4–5 (document # 64).

The following claims for relief are still before this Court:

First Claim for Relief: Alleges that the Regional Plan precludes SEZ-plaintiffs from making any reasonable or practical use of their property.

Third Claim for Relief: Alleges that the Regional Plan precludes Class 1, 2, 3 plaintiffs from making any reasonable or practical use of their property.

Fourth Claim for Relief: Alleges that the Regional Plan's restrictions deny Class 1, 2, 3 plaintiffs equal protection.

Seventh Claim for Relief: Alleges that the TRPA inversely condemned plaintiffs' property in violation of 42 U.S.C. § 1983.

Although all defendants join in each other's motions, the following specific arguments are made by the parties. The TRPA argues in support of its motion that: (1) the members of the TRPA governing body are immune from any suit because they acted in their legislative capacity; (2) the Council failed to exhaust administrative remedies in that it is not "aggrieved" within the meaning of Article VI(j)(3); (3) as a matter of law, the TRPA's amended Regional Plan and implementing ordinance are valid exercises of its police power; (4) Council has not been denied procedural due process of law; and (5) the TRPA did not act in excess of its authority.

Nevada argues in support of its motion that: (1) Council's complaint is barred by the Compact's statute of limitations; (2) Council's property has not been taken without due process of law in that the TRPA's Regional Plan and its restrictions are related to legitimate state interests; (3) the Regional Plan serves legitimate environmental objectives and satisfies the Compact's mandate; and (4) the Regional Plan is facially valid and does not unconstitutionally take any property.

California argues in support of its motion that: (1) Council fails to demonstrate an uncompensated taking in violation of the Constitution; (2) the Regional Plan does not violate any procedural or substantive due process; (3) California constitutionally delegated its power to TRPA; (4) the different restrictions for environmentally sensitive land does not violate Council's equal protection rights; and (5) there has been no

taking of Council's land without compensation.

REVIEW

■ Council contends for the first time that this Court may not grant the motions for summary judgment [4] because the necessary determinations may only be made after an *ad hoc* factual inquiry. The TRPA argues that because Council challenges the Regional Plan "on its face" that such "*ad hoc*" factual inquiry is not mandated, and furthermore that the disposition of a case by summary judgment does allow the factual inquiry that Council asserts is required. The Court finds that the record before us is sufficient and do not find that an *ad hoc* factual inquiry is mandated.

## IS THE ENTIRE COMPLAINT BARRED BY THE COMPACT'S STATUTE OF LIMITATIONS

■ As a preliminary issue, this Court must pass on the claim of defendants that the complaint is barred by the Compact's statute of limitations. The defendants argue that pursuant to Article VI(j)(4) of the Compact, the Council's complaint is time-barred. Council argues that a sixty-day limitation challenge is inappropriate for a constitutional challenge.

The Compact provides that any legal action arising out of the adoption or amendment or the Regional Plan or of any ordinance or regulation must be commenced 60 days after final agency action or 65 days after discovery of injury. Article VI(j)(4). Although the defendants contend that the agency action which provides the basis for Council's suit is the 1982 threshold adoptions by the TRPA, the gravamen of Council's complaint is that the 1984 Regional Plan unconstitutionally deprives Council of several rights. All the parties agreed that the complaint was filed within sixty days of adoption of the Regional Plan. Thus, no issue is before the Court as to whether or not the sixty-day limitation is appropriate for a constitutional challenge.

## IS THE TRPA IMMUNE FROM ALL CLAIMS FOR RELIEF BASED UPON THEIR LEGISLATIVE IMMUNITY

■ The TRPA argues that adoption of a comprehensive land use plan, such as the Regional Plan at issue here, is a legislative act and thus, cloaks the TRPA members with legislative immunity. The TRPA members argue that any time an entity enacts land use restrictions, that entity acts in a legislative capacity. Council does not really dispute this. Rather, Council asserts that it seeks injunctive relief from the enforcement of the Regional Plan. Council contends that it is not suing the TRPA members in their legislative capacity but rather in their enforcement capacity, and, therefore, the members have no immunity.

In our previous order, this Court noted that we were unable to determine from the record before us whether the TRPA members were being sued for performance of their legislative duties. 611 F.Supp. at 113 n. 6. The question presented to the Court appears to be whether the Council seeks relief from the TRPA's enactment of the land use ordinances or whether the Council seeks relief from the enforcement of the ordinances.

Both parties rely on *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), for their respective positions. In *Virginia,* a § 1983 suit was brought against the Supreme Court of Virginia and its Chief Justice challenging the Court's disciplinary rules governing the conduct of attorneys. The Virginia defendants claimed both legislative and judicial immunity. The Supreme Court distinguished between the judges' legislative, adjudicative, and enforcement functions. It held that although the state court and its Chief Justice were immune for the promulgation of the State Bar Code, which was a legislative function, *id.* at 731–34, 100 S.Ct. at 1974–76, they were

---

4. When opposing defendants' motions to dismiss, Council argued that the motions must be converted to motions for summary judgment.

Council did not suggest that summary judgment would be improper.

proper defendants in a suit for declaratory and injunctive relief as to their role in the institution and enforcement of disciplinary proceedings. *Id.* at 736–37, 100 S.Ct. at 1977.

In this case, defendant members of the TRPA do stand in the same shoes as the judges as far as the implementation of the Regional Plan is concerned. Just as the judges enforced the rules governing the conduct of attorneys, so do the members of the TRPA enforce the Regional Plan. Accordingly, summary judgment is inappropriate on this issue.

HAS THE COUNCIL FAILED TO EXHAUST ITS ADMINISTRATIVE REMEDIES

The TRPA argues that in order to bring suit challenging the constitutionality of the Regional Plan, a party must be "aggrieved" as that term is defined by the Compact.[5] The TRPA goes on to argue that because Council is not aggrieved, Council has failed to exhaust its administrative remedies. Council asserts that because it challenges the Regional Plan on its face, there is no requirement that it exhaust any administrative remedies provided to it by the Compact. Furthermore, Council notes that its seventh claim for relief is based upon 42 U.S.C. § 1983.

As the Ninth Circuit recently noted:

"In *Williamson County Regional Planning Comm'n v. Hamilton Bank,* [— U.S. ——, 105 S.Ct. 3108, 87 L.Ed.2d 126] (1985) the Supreme Court dismissed for lack of ripeness a bank's claim that county zoning regulations had effected a taking of its property in violation of the fifth amendment. The opinion advanced two alternative grounds for the result. First, because the respondent bank had not applied for variances that might have allowed greater development of its property, the government entity charged with implementing the regulations had not been given the chance to reach a final

decision regarding the application of the regulations to the property at issue. This circumstance precluded the court from determining whether 'the economic impact of [the zoning laws] and the extent to which [they] interfer[ed] with reasonable investment-backed expectations' justified a finding of a taking. *Id.* at 3119. Second, the bank had not sought compensation through the procedures the state provided for doing so. As a consequence, it could not claim that its property had been taken without just compensation. *See id.* at 3121."

*Furey v. City of Sacramento,* 780 F.2d 1448, 1450 n. 1 (9th Cir.1986).

■ Plaintiffs in a § 1983 action are not required to exhaust administrative remedies. *See Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In *Williamson,* the Supreme Court distinguished *Patsy* by finding that exhaustion of administrative remedies "is conceptually distinct, ... from the question of whether an administrative action must be final before it is judicially reviewable." *Williamson County Regional Planning Comm'n v. Hamilton Bank,* [105 S.Ct. 3108, 3120] (1985). The Court stated that:

"... the finality requirement is concerned with whether the initial decisionmaker has arrived as a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate."

*Id.* The Court distinguished exhaustion of administrative remedies from the finality issue. The Court explained that:

"[t]he difference is best illustrated by comparing the procedure for seeking a variance with the procedures that, under

5. According to the Compact, an aggrieved person means "any person who has appeared, either in person, through an authorized representative, or in writing, before the agency at an

appropriate administrative hearing to register objection to the action which is being challenged, or who had good cause for not making such an appearance." Article VI(j)(3).

*Patsy*, respondent would not be required to exhaust. While it appears that the State provides procedures by which an aggrieved property owner may seek a declaratory judgment regarding the validity of zoning and planning actions taken by authorities, ... [citations omitted], respondent would not be required to resort to those procedures before bringing its § 1983 action, because those procedures are clearly remedial. Similarly, [the Bank] would not be required to appeal the Commission's rejection of the preliminary plat to the Board of Zoning Appeals, because the Board was empowered, at most, to review that rejection, not to participate in the Commission's decision-making."

*Id.* at 3120.

In *Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the Supreme Court rejected a taking clause challenge to the Surface Mining Control and Reclamation Act of 1977. The Court noted that plaintiffs' attack did not identify any particular property that had been taken. The Court pointed out that the *"ad hoc* factual inquiries" in which courts must engage in determining whether an exercise of the police power is confiscatory "must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances." *Id.* at 295, 101 S.Ct. at 2370.

The Supreme Court's pronouncement would seem to support the TRPA's argument. Council has not presented its claims directly to the TRPA before proceeding in this Court. The requirement that it seek relief from the TRPA before coming into this Court would support dismissing this complaint as being premature. The defendants also point out various procedures which the plaintiff property owners may rely upon for relief. Those procedures are found in the Regional Plan.

The Regional Plan utilizes the Bailey Land Capability System which divides all the lands in the Lake Tahoe Basin into seven categories. Class 1 Lands are those that have the "highest theoretical risk of run-off or erosion" while Class 7 lands have the least theoretical risk. *See* Land-Capability Classification of the Lake Tahoe Basin, California-Nevada, a Guide for Planning, Robert G. Bailey 1974. The concept of the Land Capability System incorporated in TRPA's 1984 Regional Plan represents a significant factor in determining development in the Lake Tahoe Basin. Additionally, the TRPA identified and mapped certain areas of land known as Stream Environment Zones as part of its 1978 Water Quality Management Plan. Development in Class 1, 2, 3 and SEZ lands are curtailed because of the tremendous harm to the environment if development were automatically allowed.

One of the options available is that the Regional Plan provides for 75 permits for single family dwellings to be obtained by owners of Class 1, 2, or 3 land annually for three years beginning in 1986. *See* Regional Plan IV–13. The Council admitted at the hearing that none of the class 1, 2, 3, plaintiffs had sought a permit or been rejected for one prior to the filing of this lawsuit. In addition, public outdoor recreation facilities are permitted in land capability districts 1, 2, 3 if certain conditions are met. *Id.* at IV–14.

The Regional Plan also requires the TRPA to review and update its land capability map "to accurately reflect the land capability levels of all areas in the region." *Id.* at IV–15. This permits land owners to challenge a land capability classification. This means that some plaintiffs may be reclassified to a less regulated land classification.

Another option open to Council which has not yet been explored is transfer development rights.[6] *Id.* at VII–10–11. Council

---

6. Transfer development rights operate by allowing a landowner to receive density credits for development proposals in redirection areas or areas designated for transferring development potential from sensitive lands. Land coverage from sensitive lands may be transferred to tour-

argues that this is not a viable option because although contemplated by the Regional Plan, the TRPA has failed to implement any transfer development program. At the hearing, the TRPA argued that the ordinances are almost complete and that the Compact clearly mandates implementing ordinances.

Plaintiffs holding land in stream environment zones face stringent regulations. The SEZ land is the most environmentally sensitive and with certain limited exceptions, no new development will occur on this land. *Id.* at IV–25, 26. SEZ land may, however, be modified and if done in such a way that the area no longer exhibits the characteristics of SEZ, new development may be allowed. *Id.* as with Class 1, 2, 3 land, SEZ land is subject to land capability challenges for reclassification.

Council admitted at oral argument that none of the options arguably open to landowner plaintiffs have been attempted. However, on the face of the Regional Plan, options do exist for development in the Lake Tahoe Basin.[7] Accordingly, under the Supreme Court's mandate in *Williamson,* Council's complaint is not yet ripe and summary judgment should be granted as to the seventh claim for relief.

ARE THE REGIONAL PLAN AND IMPLEMENTING ORDINANCES VALID AS A MATTER OF LAW AND AS AN EXERCISE OF THE TRPA'S LEGITIMATE POLICE POWER

■ Council alleges a denial of equal protection in the allowance of building public buildings, while prohibiting private building on environmentally sensitive land. However, the mere showing of some discrimination by the TRPA is not sufficient to demonstrate an invasion of Council's constitutional rights. As courts frequently recognize, most legislation in some regard discriminates between various classes of persons, business enterprises, or other entities. However, absent a suspect classification or invasion of fundamental rights, equal protection rights are violated only where the classification does not bear a rational relationship to a legitimate state interest. *See Ybarra v. Los Altos Hills,* 503 F.2d 250, 254 (9th Cir.1974).

■ There is no suspect classification at issue here. The Court finds that the Regional Plan's allowance of public buildings on environmentally sensitive land bears a rational relationship to the TRPA's legitimate recognition that a circumstance may arise in the future that a particular public building must be built in a particular area. Thus, defendants' motions for summary judgment as to Council's fourth claim for relief should be granted.

■ The final issue before this Court is whether the Regional Plan is a legitimate exercise of police power. Council's arguments urging this Court that a complete factual inquiry must be made to determine the wisdom of the Regional Plan is misplaced. We are without authority to second-guess the TRPA. If a legitimate state interest is furthered by the zoning regulations in the Regional Plan, we will uphold the TRPA's enactments at this juncture. *See Construction Indus. Ass'n of Sonoma County v. Petaluma,* 522 F.2d 897, 906 (9th Cir.1975) *cert. denied* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976).

It is true, however, that whether the TRPA's Regional Plan subjects parcels of land to different treatment in a way that fails to serve a legitimate governmental purpose is in part a factual question. The defendants have presented this Court with

---

ist and multi-residential uses, commercial and public service uses, and regional public facilities, if coverage is available within the receiving watershed association and if coverage limits are not exceeded. Regional Plan, VII–10. Transfers are available from sensitive lands to more suitable sites and may also be transferred across jurisdictional boundaries. *Id.* at VII–11.

7. Another option open to landowners of sensitive lots outside the scope of the Regional Plan are the buyout programs administered by the federal government. Burton-Santini Act, Pub.L. No. 95–586, 94 Stat. 3381 (1980), and the State of California, Lake Tahoe Acquisitions Bond Act, Cal.Gov.Code § 66950 *et seq.* The focus of the federal program is acquisition of unimproved land classified SEZ and Class 1, 2, 3.

evidentiary material on this question. Plaintiffs affidavits do not contradict this material and, thus, there is no genuine issue of material fact which would preclude summary judgment.[8]

A zoning regulation is not made invalid merely because of loss of value to the property affected, even if that loss is substantial. *Zahn v. Board of Public Works,* 195 Ca. 497, 234 P. 388 (1925) *aff'd* 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074 (1927); *Consolidated Rock Products Co. v. Los Angeles,* 57 Cal.2d 515, 20 Cal.Rptr. 638, 370 P.2d 342 (1962); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *see also Hadacheck v. Sebastian,* 239 U.S. 394, 405, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (zoning was approved even though it caused a reduction in value of over 90 percent). The exercise of police power must not be arbitrary, unreasonable, or capricious and must be substantially related to the public welfare. *See Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. A zoning ordinance or regulation is unconstitutional only if its provisions are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. at 395, 47 S.Ct. at 121.

In determining whether the Regional Plan furthers legitimate state interests, we are not limited to a determination of whether the regulations apply only to noxious activities or dangerous structures. *Construction Indus. Ass'n of Sonoma County v. Petaluma,* 522 F.2d at 906.

"As the Court stated in *Berman v. Parker,* 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954):

The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.

(citations omitted). *Accord, Village of Belle Terre v. Boraas,* 416 U.S. 1, 6, 9, 94 S.Ct. 1536, 1539, 1541, 39 L.Ed.2d 797 (1974)."

*Id.*

The TRPA's interest in the preservation of Lake Tahoe is mandated by the 1980 amendments to the Compact. There is no disagreement between the parties that this interest is in the public welfare and is a legitimate state interest.

The Compact ordered the TRPA to establish environmental threshold carrying capacities and to adopt and enforce a regional plan to achieve and maintain these capacities. The Compact evidences the concern and importance in protecting, preserving and enhancing the scenic, recreational, educational, scientific, natural and public health values provided by the Lake Tahoe Basin. California and Nevada delegated to the TRPA the police powers necessary to carry out their mandate.

Council fails to distinguish between the exercise of the police power and the power of eminent domain. The TRPA exercised its police power in enacting the plan and the orders necessary under the plan.

"It is true the line between police power and condemnation has not been and perhaps cannot be sharply drawn. The problem is really one of degree. In both,

8. Council offered affidavits of the following expert opinions: (1) William H. Curtis, architect; (2) Sandra Fetterolf, Executive Director of Council; (3) Hugh R. McBride, real estate appraiser; (4) Keith Klein, architect; and (5) Kenneth B. Foster, civil engineer. These persons opine that there is no viable use of the individual plaintiffs' land and/or that the Regional Plan's reliance on the land capability classes is not the most accurate.

In light of this Court's ruling that the complaint is premature and that on its face the Regional Plan is constitutional, these expert opinions do not raise any material issues of fact.

damages may result but if the damage is such as to be suffered by many similarly situated and is in the nature of a restriction on the use to which land may be put and ought to be borne by the individual as a member of society for the good of the public safety, health or general welfare, it is said to be a reasonable exercise of the police power, but if the damage is so great to the individual that he ought not to bear it under contemporary standards, then courts are inclined to treat it as a "taking" of the property or an unreasonable exercise of the police power. [*Stefan Auto Body v. State Highway Comm.*, 21 Wis.2d 363, 369-70, 124 N.W.2d 319, 323 (1963) ].

While constructive takings, and not just actual takings, may be actionable under the fifth amendment where governmental regulation has imposed an excessive restriction on the use of land, a further distinction, articulated by Professor Freund in his well-known work, The Police Power, § 511, at 546-47 (1904), must be noted:

> It may be said that the state takes property by eminent domain because it is useful to the public, and under the police power because it is harmful. ... From this results the difference between the power of eminent domain and the police power, that the former recognizes a right to compensation, while the latter on principle does not.

As stated by the Court in *Just v. Marinette County*, 56 Wis.2d 7, 16, 201 N.W.2d 761, 767, 3 ELR 20167, 20168 (1972):

> *Thus the necessity for monetary compensation for loss suffered to an owner by police power restriction arises when restrictions are placed on property in order to create a public benefit rather than to prevent a public harm. [Emphasis added.]*"

*Smoke Rise, Inc. v. Washington Suburban Sanitary Comm'n*, 400 F.Supp. 1369, 1382 (D.Md.1975). In this case, the TRPA's plan is aimed at preventing the public harm to Lake Tahoe. All environmental reports, and all of the parties agree,

that Lake Tahoe is losing its clarity because of sediment washing into the water due to land erosion. Because we find that the TRPA plan is not an attempt at eminent domain, (which would be void because the TRPA does not have such authority), but rather an exercise of police power in order to prevent a public harm, Council is not entitled to injunctive relief.

Council also argues in support of its claim that its due process rights have been violated that the TRPA's failure to incorporate variance provisions in the Regional Plan's restrictions on development of high hazard, low capability lands deprives them of their right to an individual notice and hearing.

 In an exercise of the police power affecting only property rights, a zoning board is not required to prove that it adopted the least restrictive means of accomplishing a legitimate public purpose or that the means adopted is perfectly consistent with the desired result. *See Williamson v. Lee Optical*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) *reh'g denied* 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256. The board need only demonstrate that the means adopted bear a rational relation to the legitimate public purpose. *See e.g., Cowart v. Ocala*, 478 F.Supp. 774, 784 (D.C.Fla.1979). On its face, the Regional Plan stands. Accordingly, the motions for summary judgment as to the remaining claims should be granted.

IT IS, THEREFORE, HEREBY ORDERED that the defendants' motions for summary judgment are GRANTED.