# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2520 |
| COMPLETE TITLE: | Hoffer Properties, LLC, Plaintiff-Appellant-Petitioner, v. State of Wisconsin, Department of Transportation, Defendant-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 354 Wis. 2d 621, 848 N.W.2d 903)
(Ct. App. 2014 – Unpublished)

| | |
|---|---|
| OPINION FILED: | February 4, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 8, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Jefferson |
| JUDGE: | William F. Hue |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, A.W. BRADLEY, J.J., concur. (Opinion Filed) |
| DISSENTED: | PROSSER, J., dissents. (Opinion Filed) |
| NOT PARTICIPATING: | R.G. BRADLEY, J., did not participate. |

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs by *Benjamin Southwick*, Richland Center and oral argument by *Benjamin Southwick*.

For the defendant-respondent, the cause was argued by *Abigail C.S. Potts*, Assistant Attorney General, with whom on the brief was *Brad D. Schimel*, Attorney General.

There was an amicus curiae brief by *Erik Samuel Olsen, Joseph J. Rolling, Andrew Weininger and Eminent Domain Services, LLC,* Madison, on behalf of Eminent Domain Services, LLC.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2520
(L.C. No. 2009CV499)

STATE OF WISCONSIN        :      IN SUPREME COURT

**Hoffer Properties, LLC,**

    **Plaintiff-Appellant-Petitioner,**

    **v.**

**State of Wisconsin, Department of Transportation,**

    **Defendant-Respondent.**

**FILED**

**FEB 4, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of an unpublished decision of the court of appeals affirming a grant of partial summary judgment to the Department of Transportation (DOT).[1] Pursuant to Wis. Stat. § 84.25 (2007-08),[2] DOT eliminated Hoffer Properties, LLC's (Hoffer's) direct driveway connections to State Trunk Highway 19 (STH 19), a controlled-access highway. DOT also separately exercised its power of eminent domain to

---

[1] Hoffer Props., LLC v. DOT, No. 2012AP2520, unpublished slip op. (Wis. Ct. App. May 1, 2014).

[2] All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

acquire .72 acre of Hoffer's land in order to extend Frohling Lane westward so as to connect Hoffer's property to the highway. Hoffer received $90,000 in compensation for the .72 acre taken to construct the Frohling Lane extension. Hoffer is challenging the amount of compensation awarded.

¶2 Hoffer does not claim that the $90,000 was inadequate compensation for the .72 acre itself. Hoffer concedes that DOT properly designated STH 19 as a controlled-access highway.[3] Additionally, Hoffer agrees that the designation of a highway as "controlled-access" is a valid exercise of the police power and further agrees that such exercises are not compensable under the eminent domain statutes.[4] Hoffer argues, however, that because there was a partial taking of some portion of its property under eminent domain, the damages attributable to the loss of direct access to STH 19 are compensable pursuant to the partial takings subsection of the just compensation statute, Wis. Stat.

---

[3] When asked in the trial court whether there was any dispute that STH 19 was a controlled-access highway, Hoffer responded "No argument, your Honor. As [the attorney for DOT said], the Department properly caused it to be or declared it to be a controlled-access highway."

[4] In its brief to this court, Hoffer states:

In accordance with Wis. Stat. § 32.09(6)(b), DOT can deprive or restrict an abutting owner's right of access to a highway 'without compensation under any duly authorized exercise of the police power.' The only way that DOT can acquire an abutting owner's access rights under the police power and without the payment of compensation is by declaring the highway in [sic] to be a controlled-access highway under § 84.25.

2

§ 32.09(6)(b). Consequently, Hoffer contends, compensation for the .72 acre must include the diminution of value of the property due to the loss of its direct access to the highway.

¶3 Hoffer appealed the amount of compensation to the Jefferson County circuit court, Honorable William F. Hue, presiding. At the circuit court, Hoffer argued that DOT owed him additional compensation for diminution of the value of the property due to the loss of direct access to STH 19 if a jury determined the access provided by the Frohling Lane extension is unreasonable. DOT argued that because it exercised its police power to eliminate Hoffer's direct access to STH 19 and because Hoffer has alternate access to the property through the Frohling Lane extension, Hoffer has reasonable access as a matter of law and no compensation is due. The circuit court agreed and granted partial summary judgment to DOT.

¶4 The court of appeals affirmed, concluding that under our holding in Surety Savings & Loan Ass'n v. DOT, 54 Wis. 2d 438, 195 N.W.2d 464 (1972), when DOT acts pursuant to the controlled-access highway statute "the inquiry is merely whether alternate access was provided." Hoffer Props., LLC v. DOT, No. 2012AP2520, unpublished slip op., ¶7 (Wis. Ct. App. May 1, 2014) (citing Surety Savings, 54 Wis. 2d at 444-45). The court of appeals determined that the circuit court's grant of summary judgment was proper because DOT provided alternate access to Hoffer's property. Id.

¶5 We consider two issues. First, whether DOT is duly authorized by Wis. Stat. § 84.25 to eliminate an abutting

3

owner's direct access to a controlled-access highway and replace it with more circuitous access.[5] Second, whether the provision or existence of some access to the abutting property obviates the need for a jury determination of "reasonableness" because the abutting property owner is precluded from compensation pursuant to Wis. Stat. § 32.09(6)(b).

¶6   First, we hold that Wis. Stat. § 84.25(3) authorizes DOT to change Hoffer's access to STH 19 in whatever way it deems "necessary or desirable." Such changes, including elimination of direct access points, are duly authorized exercises of the police power and are not compensable under Wis. Stat. § 32.09 as long as alternate access is given that does not deprive the abutting owner of all or substantially all beneficial use of the property. Second, we hold that when DOT changes an abutting property owner's access to a controlled-access highway but other access is given or exists, the abutting property owner is precluded from compensation pursuant to Wis. Stat. § 32.09(6)(b) as a matter of law and no jury determination of reasonableness is required. Reasonableness is the wrong standard to apply because the provision of some access preserves an abutting property owner's right of access to a controlled-access highway, and thus no taking compensable under Wis. Stat. § 32.09(6)(b) occurs. Accordingly, Hoffer is precluded from compensation under

---

[5] Neither the circuit court nor the court of appeals addressed this issue because Hoffer did not raise it before either court.

Wis. Stat. § 32.09(6)(b) because alternate access to the property was provided by the Frohling Lane extension. We therefore affirm the court of appeals.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶7   Hoffer Properties, LLC, owns the subject property, a 9.90 acre parcel of land located west of Watertown. The property's northern boundary is State Trunk Highway 19. Prior to 2008, the property had direct access to STH 19 via two driveways. The property consists of a single-family dwelling, the first floor of which is Hoffer's real estate office; a barn that is rented for storage; and a machine shed that is partially rented as a workshop. On June 14, 2002, DOT designated 13.76 miles of STH 19 a "controlled-access" highway pursuant to Wis. Stat. § 84.25.[6] The portion of STH 19 that was designated

---

[6] Wis. Stat. § 84.25, the controlled-access highway statute, consists of several subsections that outline the powers of DOT to regulate traffic on the highway and the rights of users, abutting landowners, and the general public after that declaration is made. The procedures DOT must follow to make a valid declaration of controlled-access are stated in section 84.25(1):

> The legislature declares that the effective control of traffic entering upon or leaving intensively traveled highways is necessary in the interest of public safety, convenience and the general welfare. The department is authorized to designate as controlled-access highways the rural portions of the state trunk system on which, after traffic engineering surveys, investigations and studies, it shall find, determine and declare that the average traffic potential is in excess of 2,000 vehicles per 24-hour day. Such designation of a portion of any state trunk highway in any county as a controlled-access highway shall not be effected until after a public hearing in the matter

(continued)

"controlled-access" included the portion that bounded Hoffer's property.

¶8  In 2008, DOT undertook a highway improvement project that involved relocating STH 26, which was to intersect with STH 19 to the west of Hoffer's property. DOT determined that it was necessary to change the access points to STH 19 in the vicinity of the relocated STH 26 as part of the project.  To that end, on December 29, 2008,[7] DOT eliminated Hoffer's direct access to STH 19.  DOT acquired through eminent domain both .72 acre of Hoffer's land as well as a temporary limited easement in order to create alternate access to Hoffer's property. DOT tendered to

has been held in the county courthouse or other convenient public place within the county following notice by publication of a class 3 notice, under ch. 985, in a newspaper published in the county. If the department shall then find that the average traffic potential is as provided by this subsection, and that the designation of the highway as a controlled-access highway is necessary in the interest of public safety, convenience and the general welfare, it shall make its finding, determination and declaration to that effect, specifying the character of the controls to be exercised. Copies of the finding, determination and declaration shall be recorded with the register of deeds, and filed with the county clerk, and published as a class 1 notice, under ch. 985, in the newspaper in which the notice of hearing was published, and the order shall be effective on such publication. Not more than 1,500 miles of highway shall be designated as controlled-access highways under authority of this section.

[7] Hoffer's brief to this court states that the date of this taking was December 28, 2009; the Deed by Corporation indicates the date as December 29, 2008.

6

Hoffer $90,000 for this taking. Hoffer's existing direct access to STH 19 was replaced by extending Frohling Lane (a north-south roadway that intersects with STH 19) westward to Hoffer's property. DOT constructed a new driveway north from this extension to restore vehicular access to Hoffer's property.[8] Hoffer's replacement access requires vehicles to travel roughly 1,000 feet to reach STH 19.

¶9  On May 29, 2009, Hoffer appealed the amount of compensation it received to the Jefferson County circuit court pursuant to the eminent domain statutes, Wis. Stat. ch. 32.[9] Hoffer claimed that because there had been a partial taking of its land, Wis. Stat. § 32.09(6)(b)[10] required DOT to include in

---

[8] Payment for the driveway is not at issue because Hoffer conceded at oral argument that DOT had constructed and paid for the new driveway.

[9] Pursuant to Wis. Stat. § 32.05(2)-(7), DOT must have an appraisal of the property taken prior to condemnation. DOT must then negotiate with the property owner for purchase of the property. If no agreement can be reached, DOT makes a jurisdictional offer to purchase which describes the nature of the project, the property to be taken, the proposed date of occupancy, the amount of compensation offered, the right of the property owner to accept or reject the offer, and an explanation of how to appeal the amount of compensation offered. Wis. Stat. § 32.05(3). If the property owner rejects the offer, the amount of compensation offered can be appealed to a judge of the circuit court for the county in which the property is located. See Wis. Stat. § 32.05(9)(a).

[10] Wis. Stat. § 32.09 governs just compensation in eminent domain proceedings.  Subsection (6) governs partial takings. Subsection (6)(b) allows for compensation for diminution of value to the rest of the property caused by "deprivation or restriction of [an] existing right of access to [a] highway from abutting land, provided that nothing herein shall operate to
(continued)

the amount of compensation paid for the taking the amount by which the value of the property was diminished due to the loss of its direct access to STH 19. Hoffer conceded that DOT properly designated STH 19 a "controlled-access" highway pursuant to Wis. Stat. § 84.25.[11] Hoffer contended, however, that Wisconsin law requires DOT to pay compensation if DOT does not provide reasonable access between the highway and Hoffer's property. Citing our decision in National Auto Truckstops, Inc., v. DOT, 2003 WI 95, 263 Wis. 2d 649, 665 N.W.2d 198, Hoffer filed a motion in limine seeking an order that reasonable access was a jury question and that Hoffer was due compensation if a jury decided that the Frohling Lane access was unreasonable.

¶10 DOT moved for partial summary judgment, arguing that pursuant to our holding in Surety Savings "there is no compensable taking when direct access to a controlled-access highway is denied, where other access is given or otherwise exists." Surety Savings, 54 Wis. 2d at 443. DOT stated that because there was no dispute that it had acted pursuant to Wis. Stat. § 84.25, the controlled-access highway statute, and because the Frohling Lane extension had provided "other access" to the property, Hoffer's access was reasonable as a matter of

---

restrict the power of the state . . . to deprive or restrict such access without compensation under any duly authorized exercise of the police power."

[11] See n.3.

8

law, so any claim for damages resulting from a change in Hoffer's access was barred.

¶11 Following a hearing, the circuit court denied Hoffer's motions and granted partial summary judgment to DOT. The circuit court found that the elimination of Hoffer's direct access to STH 19 was a noncompensable exercise of the police power and that reasonable access had been given as a matter of law. Thereafter, the circuit court granted Hoffer's motion to dismiss the action but preserved Hoffer's right to appeal.

¶12 On appeal, Hoffer argued that our holding in National Auto Truckstops required DOT to compensate the owner of abutting land if 1) DOT eliminates the property's direct access to a controlled-access highway; and 2) a jury determines that the replacement access is unreasonable. In an unpublished per curiam opinion, the court of appeals affirmed the circuit court. Hoffer Props., LLC, No. 2012AP2520, unpublished slip op. The court of appeals distinguished National Auto Truckstops by noting that the highway at issue there was not a controlled-access highway. Id., ¶6. The court of appeals determined that Surety Savings controlled, and "reject[ed] Hoffer's argument that the question of whether the alternate access was reasonable was required to be decided by a jury, because reasonableness is not the correct legal standard to apply. Under Surety Savings, the inquiry is merely whether alternate access was provided." Id., ¶7. The court of appeals determined that because alternate access to Hoffer's property was provided, no compensable taking had occurred. See id.

9

¶13 Hoffer petitioned this court for review, which we granted on February 10, 2015.

## II. STANDARD OF REVIEW

¶14 This case requires us to construe the controlled-access highway statute, Wis. Stat. § 84.25, and the just compensation statute, Wis. Stat. § 32.09. "The interpretation of a statute is a question of law that we review de novo." Crown Castle USA, Inc., v. Orion Constr. Grp., LLC, 2012 WI 29, ¶12, 339 Wis. 2d 252, 811 N.W.2d 332. "We interpret statutes independently, but benefit from both our prior analyses and that of the lower courts." Id. (citation omitted).

## III. STATUTORY INTERPRETATION

¶15 Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. "We attempt to give reasonable effect to every word, avoiding both surplusage and absurd or unreasonable results." Crown Castle USA, 339 Wis. 2d 252, ¶13 (citing Kalal, 271 Wis. 2d 633, ¶46). Further, "the context and structure of the statute are important, and we interpret the statute in light of 'surrounding or closely-related statutes.'" Masri v. LIRC, 2014 WI 81, ¶30, 356 Wis. 2d 405, 850 N.W.2d 298 (quoting Kalal, 271 Wis. 2d 633, ¶46).

10

IV. DISCUSSION

¶16 We first discuss whether the elimination of an abutting property owner's direct access to a controlled-access highway is an exercise of the police power duly authorized by Wis. Stat. § 84.25. We hold that it is, because the statute authorizes DOT to change access to such a highway as DOT deems "necessary or desirable." We then consider whether the provision of some alternate access to an abutting property owner's property obviates the need for a jury determination of "reasonableness" in controlled-access highway cases. We hold that reasonableness is the wrong standard to apply because when DOT changes an abutting property owner's access pursuant to Wis. Stat. § 84.25, no taking compensable under Wis. Stat. § 32.09(6)(b) occurs. Thus, in controlled-access highway cases abutting property owners are precluded from compensation for a change in access pursuant to Wis. Stat. § 32.09(6)(b) as a matter of law. However, exercises of the police power cannot deprive the owner of all or substantially all beneficial use of the property without compensation. If the replacement access is so circuitous as to amount to a regulatory taking of the property, then compensation is due and the abutting property owner may bring an inverse condemnation claim pursuant to Wis. Stat. § 32.10.

11

## A. ELIMINATION OF AN ABUTTING PROPERTY OWNER'S DIRECT ACCESS TO A CONTROLLED-ACCESS HIGHWAY IS A DULY AUTHORIZED EXERCISE OF THE POLICE POWER

¶17 The Fourteenth Amendment to the United States Constitution states that no person shall be deprived of property without due process of law. U.S. Const. amend. XIV, § 1. The Wisconsin Constitution provides that "[t]he property of no person shall be taken for public use without just compensation therefor." Wis. Const. art. I, § 13. "It has long been settled, however, that these constitutional provisions interpose no barrier to the exercise of the police power of the state." State ex rel. Carter v. Harper, 182 Wis. 148, 151, 196 N.W. 451 (1923). In other words, "injury to property resulting from the exercise of the police power of the state does not necessitate compensation." Surety Savings, 54 Wis. 2d at 443. A state acts under its police power when it regulates in the interest of public safety, convenience, and the general welfare of the public. See Nick v. State Highway Comm'n, 13 Wis. 2d 511, 513-14, 109 N.W.2d 71 (1961). Government action such as a regulation can amount to a compensable taking absent a physical occupation, however, "if [the effects of the governmental action] are so complete as to deprive the owner of all or most of his interest in the subject matter." Wisconsin Light & Power Co. v. Columbia Cty., 3 Wis. 2d 1, 5, 87 N.W.2d 279 (1958) (quoting United States v. General Motors Corp., 323 U.S. 373, 378 (1945)); see also Just v. Marinette Cty., 56 Wis. 2d 7, 15, 201 N.W.2d 761 (1972) ("The protection of public rights may be accomplished by the exercise of the police power unless the damage to the

12

property owner is too great and amounts to a confiscation."). Claims for such "regulatory takings" must be brought under Wis. Stat. § 32.10, the inverse condemnation statute.

¶18 The primary distinction between the power of eminent domain and the police power of the state most relevant to the present case is that government takings by eminent domain are compensable under Wis. Stat. § 32.09, while government actions pursuant to the police power are not, except in limited circumstances. See Wis. Stat. § 32.09(4), (6)(b). While we note that "[t]he right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon," 118th Street Kenosha, LLC, v. DOT, 2014 WI 125, ¶30, 359 Wis. 2d 30, 856 N.W.2d 486 (quoting Hastings Realty Corp. v. Texas Co., 28 Wis. 2d 305, 310, 137 N.W.2d 79 (1965)), we also note that, provided the damage does not amount to a regulatory taking of the property, Wisconsin. Stat. § 32.09(6)(b) allows the state "to deprive or restrict such access without compensation under any duly authorized exercise of the police power."

> 1.  DOT Exercises the Police Power When It
> Designates a Highway "Controlled-Access"

¶19 By means of Wis. Stat. § 84.25, the controlled-access highway statute, the legislature has authorized DOT to designate up to 1,500 miles of heavily traveled, rural highways "controlled-access." This is a tightly circumscribed power, and the designation can be made only if DOT first takes the specific steps enumerated in Wis. Stat. § 84.25(1). Among other things,

13

DOT must conduct "traffic engineering surveys, investigations and studies" to determine whether the average traffic potential for the highway is in excess of 2,000 vehicles per 24-hour day. Wis. Stat. § 84.25(1). Before the controlled-access designation can be made, DOT is required to hold a public hearing on the matter following notice by publication in a county newspaper in the county in which the highway lies. Id. If, after the required surveys and investigations and the required public notice and hearing, DOT then finds that both the traffic potential is above 2,000 vehicles a day "and that the designation of the highway as a controlled-access highway is necessary in the interest of public safety, convenience and the general welfare," DOT "shall make its finding, determination and declaration to that effect, specifying the character of the controls to be exercised." Id. Copies of the finding, determination and declaration must be recorded with the register of deeds and filed with the county clerk as well as published in the same newspaper as notice of the hearing. Once the publication has taken place, the designation of "controlled-access" becomes effective. Id.

¶20 It is this designation of a highway as "controlled-access" that must be "necessary in the interest of public safety, convenience and the general welfare . . . ." Wis. Stat. § 84.25(1). Thus, it is the designation that is an exercise of the police power. Surety Savings, 54 Wis. 2d at 443 ("The designation of a highway as a controlled-access highway is an exercise of the police power."). The designation of a highway as "controlled-access" serves as a precondition for the operation

14

of the other subsections of Wis. Stat. § 84.25, the controlled-access highway statute. These subsections grant DOT expansive powers after it has properly designated part or all of a highway "controlled-access," including authority over how the general public and abutting property owners access the highway. See Wis. Stat. § 84.25(3)-(5), (7)-(10), (13). Once the highway has been designated "controlled-access," the statute authorizes DOT to subsequently change the access points in whatever way it "deems necessary or desirable."[12]

2. The Effect of a Controlled-Access Highway Designation on the Rights of Users and Abutting Property Owners

¶21 Wisconsin Stat. § 84.25 explains how the rights of users and abutting property owners are restricted by the designation of the highway as "controlled-access." See Wis. Stat. § 84.25(4)-(6), (11), (12). Pertinent here, the statute states that "[n]o person shall have any right of entrance upon . . . any controlled-access highway, or to or from abutting lands except at places designated and provided for such purposes, and on such terms and conditions as may be specified from time to time by the department." Wis. Stat. § 84.25(5). The

---

[12] The statute cannot authorize unconstitutional deprivations of property without just compensation; thus, in order to exercise the police power to change an abutting owner's access to the highway without paying compensation, DOT must provide some access to the property that is not so circuitous as to deprive the abutting owner of all or substantially all beneficial use of the property. Pursuant to Wis. Stat. § 84.25, DOT may change access in whatever way it deems "necessary or desirable" within these constitutional boundaries.

15

statute also expressly curtails the access rights of abutting property owners, so that "[a]fter the designation of a controlled-access highway, the owners . . . of abutting lands shall have no right or easement of access, by reason of the fact that their property abuts on the controlled-access highway or for other reason, except only the controlled right of access . . . ." Wis. Stat. § 84.25(6). Pursuant to this subsection, abutting property owners lose any right to compensation under Wis. Stat. § 32.09 for a change in access to the highway, provided some access remains, at the moment DOT makes the "controlled-access" designation. See Nick, 13 Wis. 2d at 515 ("The situation regarding the question of damages [for diminution of value of the property due to a loss of direct access to a controlled-access highway] was frozen when the commission declared highway 30 a controlled-access highway.").

¶22 The controlled-access highway statute is unique in its operation against abutting property owners,[13] and consequently the legislature limited DOT's authority to exercise the police power and make a "controlled-access" designation. The legislature prescribed elaborate procedures, including public

---

[13] As will be discussed below, the other statutes that comprise Wis. Stat. ch. 84, the State Trunk Highways chapter, contain different language regarding compensation to abutting property owners than does the controlled-access highway statute. Consequently, the access rights of abutting property owners are affected differently by the designation of the highway as "controlled-access" than by actions taken by the DOT pursuant to other statutes in the chapter.

notice and hearing, which DOT must follow to designate a highway "controlled-access." Furthermore, the legislature limited the amount of highway DOT can designate "controlled-access" to 1,500 miles. DOT cannot change or restrict an abutting owner's existing access to a State trunk highway[14] without paying compensation pursuant to Wis. Stat. § 32.09 unless DOT has validly designated the highway "controlled-access" and alternate access to the highway has been provided. An abutting property owner's opportunity to object to DOT's exercise of the police power comes at the time of the hearing on whether to designate the highway "controlled-access." After a valid controlled-access designation has been made, however, DOT may change an abutting owner's access to the highway without compensation, pursuant to Wis. Stat. § 84.25(3), in whatever way it "deems necessary and desirable" as long as it provides other access that does not deprive the abutting owner of all or substantially all beneficial use of the property. After a valid controlled-access designation is made, the abutting owner's rights are curtailed——and the DOT subsequently acts——pursuant to a duly authorized exercise of the police power.

### 3. Hoffer's Direct Access was Eliminated Pursuant to an Exercise of the Police Power

¶23 Hoffer concedes that "DOT can deprive or restrict an abutting owner's right of access to a highway 'without

---

[14] Provided the State trunk highway has not otherwise been designated a freeway pursuant to Wis. Stat. § 84.295 or designated an interstate highway pursuant to Wis. Stat. § 84.29.

17

compensation under any duly authorized exercise of the police power.'"[15] Hoffer further concedes that the designation of a highway as controlled-access is a duly authorized exercise of the police power and that DOT followed all of the required procedures in Wis. Stat. § 84.25(1) to designate STH 19 a controlled-access highway.[16] Hoffer argues, however, that the controlled-access highway statute does not grant DOT the power to subsequently eliminate its direct access to STH 19 and replace it with more circuitous access. Rather, Hoffer claims that Wis. Stat. § 84.25 grants DOT "authority to <u>regulate</u> an abutting owner's direct access . . . to an existing State trunk highway without paying compensation to the owner, but such authority is not granted to <u>eliminate</u> that access." Hoffer's argument rests on its emphasis of certain language in the statute which grants DOT authority to prohibit anyone from entering or leaving the highway "<u>except</u> at places designated and provided for such purposes" and that abutting owners have no right of access "<u>except</u> only the controlled right of access." Hoffer claims that by using the words "except"[17] and

---

[15] See n.4.

[16] See n.3.

[17] Hoffer does not explain how the word "except" is meant to withhold DOT's authority to eliminate access points. Presumably, Hoffer's theory is that by allowing DOT to prohibit anyone from entering the highway "except" at places "designated and provided for such purposes" by the department, the legislature granted DOT authority over the rest of the highway but not over the preexisting access points.

18

"controlled," the legislature indicated its intent to withhold from DOT authority to eliminate an abutting owner's direct access to a controlled-access highway. Hoffer insists that DOT's authority to regulate does not include the authority to eliminate preexisting direct access points and replace them with more circuitous access to a controlled-access highway.

¶24 Hoffer is mistaken. Its proposed construction is at odds not only with the plain language of the statutes, but with the clear holdings of our case law. There are three reasons why Hoffer's proposed interpretation cannot be correct.

¶25 First, Wis. Stat. § 84.25(3) states that "the department may use an existing highway . . . for a controlled-access highway . . . and so regulate, restrict or prohibit access to or departure from it as the department deems necessary or desirable." This very precise language indicates that the legislature granted expansive authority to DOT to change access to a controlled-access highway. By allowing DOT to designate an existing highway "controlled-access" and thereafter "regulate, restrict or prohibit access to or departure from it as the department deems necessary or desirable," the legislature granted DOT broad control over the entire portion of the existing highway that has been designated "controlled-access," including placement and replacement of access points. Because it is self-evident that elimination of direct access points is a means of "restrict[ing] or prohibit[ing] access," Hoffer cannot be correct when it argues that the statute does not grant DOT authority to eliminate Hoffer's direct access points.

19

¶26 Second, Wis. Stat. § 84.25(5) states that "[n]o person shall have any right of entrance" to a controlled-access highway, "or to or from abutting lands," except at places designated for such purposes "and on such terms and conditions as may be specified [by the department] from time to time" (emphasis added). The phrase "from time to time" indicates that the legislature enabled DOT to periodically change the terms and conditions by which any person——abutter or otherwise——has access to a controlled-access highway. See Surety Savings, 54 Wis. 2d at 444-45 (holding that Wis. Stat. § 84.25(5) "demonstrate[s] the legislature's intent to give the highway commission continuing power to review and modify its authorizations for access to or across a controlled-access highway"). Replacing direct access with a more circuitous route is inarguably a change of the "terms and conditions" by which an abutter is allowed to enter the highway. We cannot accept a construction of a statute that does not "give reasonable effect to every word, avoiding both surplusage and absurd or unreasonable results." Crown Castle USA, 339 Wis. 2d 252, ¶13 (citing Kalal, 271 Wis. 2d 633, ¶46). Hoffer's reading of the statute ignores that part of § 84.25(5) which expressly vests DOT with authority to change the "terms and conditions" of access "from time to time." Thus, this argument must be rejected.

¶27 Third, Wis. Stat. § 84.25(6) states that once a highway is designated controlled-access, abutting owners "shall have no right or easement of access, by reason of the fact that

20

their property abuts on the controlled-access highway or for other reason, except only the controlled right of access . . . ." Wis. Stat. § 84.25(6). This subsection eliminates an abutting property owner's right to compensation under § 32.09(6)(b) for a change to existing access at the moment DOT designates the highway "controlled-access." See Nick, 13 Wis. 2d at 515. Replacement access which results in a circuitous route rather than a direct one is a lawful——if regrettable——result of controlling access. See, e.g., Carazalla v. State, 269 Wis. 593, 71 N.W.2d 276 (1955) (holding that circuity of travel is not a compensable item of damages); Nick, 13 Wis. 2d at 514 ("if no land is taken for the converted highway but the abutting landowner's access to the highway is merely made more circuitous, no compensation should be paid,"); McKenna v. State Highway Comm'n, 28 Wis. 2d 179, 184, 135 N.W.2d 827 (1965) ("There is no taking in the sense required by the statute, where, as in this case, another access route is available."); Stefan Auto Body v. State Highway Comm'n, 21 Wis. 2d 363, 369-74, 124 N.W.2d 319 (1963) (noting that in controlled-access highway cases circuity of travel resulting from a changed access point is not compensable).

¶28 In the present case, DOT conducted the required traffic engineering surveys, investigations, and studies to designate STH 19 "controlled-access." DOT held a public hearing on the matter on May 4, 2002, at the Milford Town Hall in Jefferson County after giving notice by three separate publications in two separate Jefferson County newspapers. It

21

found that the potential traffic on STH 19 exceeded 2,000 vehicles per day and that it was necessary in the interest of public safety, convenience, and the general welfare to designate STH 19 "controlled-access." In sum, DOT did everything necessary to validly designate STH 19 "controlled-access." Upon that designation Hoffer lost its right to be compensated pursuant to Wis. Stat. § 32.09(6)(b) for a change to existing access resulting in circuity of travel. By the time Hoffer's direct access was eliminated, the controlled-access designation of STH 19 had been made, Hoffer's right of access had been curtailed to the "controlled right of access," DOT had determined it was "necessary or desirable" to change Hoffer's access to the highway, and DOT provided alternate access to Hoffer's property.

¶29 In light of the foregoing, we conclude that DOT's replacement of Hoffer's direct access with circuitous access to a controlled-access highway was done pursuant to an exercise of the police power duly authorized by Wis. Stat. § 84.25. Consequently the elimination of Hoffer's direct access to STH 19 was not compensable under Wis. Stat. § 32.09(6)(b).

### B.  IN CONTROLLED-ACCESS HIGHWAY CASES ABUTTING PROPERTY OWNERS ARE PRECLUDED FROM SEEKING COMPENSATION UNDER WIS. STAT. § 32.09(6)(b) FOR DAMAGE TO THE PROPERTY RESULTING FROM A CHANGE IN ACCESS

¶30 As noted above, when DOT designates a highway "controlled-access," an abutting owner's right to compensation pursuant to Wis. Stat. § 32.09(6)(b) for a replacement of existing access is eliminated. The abutting owner's remaining property right of access is the controlled right of access and

22

not the right to access as it existed prior to or contemporaneously with the highway's designation as "controlled-access." The right of access

> involves only the right to enter and leave the property without being forced to trespass across the land of another. It does not include any right to develop property with reference to the type of access granted or to have access at any particular point on the boundary lines of the property.

Surety Savings, 54 Wis. 2d at 444 (emphasis added). The controlled right of access is also subject to "such terms and conditions as may be specified from time to time by [DOT]." Wis. Stat. § 84.25(5). Requiring an abutting property owner to access a controlled-access highway by a more circuitous route rather than directly is a "term[] and condition[]" of access and a lawful means of "controlling" access. Consequently, this court has stated that "[w]here access to a highway is controlled under the exercise of the police power and reasonable access remains, no compensation is required." Schneider v. State, 51 Wis. 2d 458, 462, 187 N.W.2d 172 (1971) (citing Nick, 13 Wis. 2d 511). In both Schneider and Surety Savings, we held that because DOT had changed the abutting property owners' access pursuant to the controlled-access highway statute, the abutting property owners were precluded from seeking compensation for diminution of value of the property that resulted from the changed access. See Schneider, 51 Wis. 2d at 463-64; Surety Savings, 54 Wis. 2d at 443. Hoffer states that the property owners in neither case challenged the replacement access as "unreasonable," and contends that because it has made such a

23

challenge it is due compensation for diminution of value damages if a jury determines its replacement access is unreasonable. For the reasons discussed below, we disagree.

1. A Taking Occurs Only if the Access Provided Deprives the Abutting Property Owner of All or Substantially All Beneficial Use of the Property

¶31 A taking must occur before a viable claim for compensation can arise. Howell Plaza, Inc. v. State Highway Comm'n, 92 Wis. 2d 74, 80, 284 N.W.2d 887 (1979) (hereinafter Howell Plaza II). No compensable taking occurs when DOT changes an abutting property owner's access to a controlled-access highway if other access is provided that does not deprive the owner of all or substantially all beneficial use of the property. Additionally, "duly authorized" acts of the police power that restrict or deprive access to a highway from abutting lands are not compensable pursuant to Wis. Stat. § 32.09(6)(b). When no taking compensable pursuant to Wis. Stat. § 32.09(6)(b) has occurred, there is nothing for a jury to determine pursuant to Wis. Stat. § 32.09(6)(b). Thus, in controlled-access highway cases, abutting property owners are precluded from compensation under Wis. Stat. § 32.09(6)(b) as a matter of law because no compensation is possible pursuant to that statute. Making a claim that the access given is unreasonable does not transform an act that is noncompensable pursuant to Wis. Stat. § 32.09(6)(b) into a compensable one.

¶32 This does not mean, however, that the provision of alternate access to a controlled-access highway precludes the

24

abutting property owner from compensation in all possible contexts. Changes in access to a controlled-access highway may support a claim pursuant to Wis. Stat. § 32.10 for a regulatory taking of the property. "The protection of public rights may be accomplished by the exercise of the police power unless the damage to the property owner is too great and amounts to a confiscation." Just, 56 Wis. 2d at 15. The abutting property owner may not be deprived of all or substantially all beneficial use of his property without compensation by means of an exercise of the police power or otherwise. See E-L Enterprises, Inc., v. Milwaukee Metro. Sewerage Dist., 2010 WI 58, ¶37, 326 Wis. 2d 82, 785 N.W.2d 409. "Whether a taking [pursuant to Wis. Stat. § 32.10] has occurred depends upon whether 'the restriction practically or substantially renders the land useless for all reasonable purposes.'" Just, 56 Wis. 2d at 15 (quoting Buhler v. Racine Cty., 33 Wis. 2d 137, 143, 146 N.W.2d 403 (1966)).

¶33 If the access DOT provides to a controlled-access highway deprives the abutting property owner of all or substantially all beneficial use of the property, DOT has taken the property and the change in access may support an inverse condemnation claim pursuant to Wis. Stat. § 32.10. However, "even if a highway construction project results in damages that are compensable under a particular statute, those damages cannot be recovered in a claim brought under the wrong statute." 118th Street, 359 Wis. 2d 30, ¶33. The proper mechanism for pursuing compensation for damages resulting from a change in access when

25

DOT acts pursuant to the controlled-access highway statute is to bring an inverse condemnation claim under Wis. Stat. § 32.10. Thus, even had Hoffer's replacement access deprived it of all or substantially all beneficial use of its property, it could not recover under the Wis. Stat. § 32.09(6)(b) claim it has pursued here.

¶34 We recognize that this is a high standard for owners of property abutting a controlled-access highway to meet. Controlled-access highways are, however, limited and unique, and the legislature granted DOT authority to regulate access to them under the police power in whatever way DOT deems necessary and desirable provided the abutting property owner retains some access to the highway. The legislature further codified the principle that valid exercises of the police power do not require payment under the just compensation statute, Wis. Stat. § 32.09, except in limited circumstances. We will not intrude upon these legislative choices.

### 2. It is Presumed that the Legislature Purposefully Omitted a Reasonableness Standard from the Controlled-Access Highway Statute

¶35 An analysis of the surrounding statutes in Wis. Stat. ch. 84 further compels the conclusion that "reasonableness is not the correct legal standard to apply" when DOT changes an abutting property owner's access to a controlled-access highway and thus no jury is required in controlled-access highway cases. Hoffer Properties, slip. op., ¶7. "When the legislature enacts a statute, it is presumed to act with full knowledge of the

26

existing laws, including statutes." Mack v. Joint Sch. Dist. No. 3, 92 Wis. 2d 476, 489, 285 N.W.2d 604 (1979). The freeway statute, Wis. Stat. § 84.295, states that "reasonable provision for public highway traffic service or access to abutting property shall be provided by means of frontage roads . . . or the right of access to or crossing of the public highway shall be acquired on behalf of the state" when DOT is undertaking a freeway project (emphasis added). Identical language appears in Wis. Stat. § 84.29, the interstate highway statute.

¶36 These statutes command that if DOT does not provide reasonable access to the highway by means of frontage roads when undertaking a freeway or interstate highway project, the abutting property owners are due compensation under Wis. Stat. § 32.09 for a taking of their access rights.[18] This language is conspicuously absent from the controlled-access highway statute. Rather, Wis. Stat. § 84.25(6) states that owners "of abutting lands shall have no right or easement of access . . . except only the controlled right of access." We presume that had the legislature intended to include reasonableness as a component of Wis. Stat. § 84.25 and allow for compensation under Wis. Stat. § 32.09, it would have included this language in the statute, as it did for freeways and expressways in Wis. Stat. § 84.295 and for interstate highways in Wis. Stat. § 84.29.

---

[18] Wisconsin Stat. § 990.01(2) governs the construction of Wisconsin laws, and it states that "[a]cquire," when used in connection with a grant of power to any person, includes the acquisition by purchase, grant, gift or bequest. It includes the power to condemn in the cases specified in s. 32.02.

¶37 The legislature, however, omitted this command from Wis. Stat. § 84.25. When DOT acts pursuant to the controlled-access highway statute, abutting property owners must be compensated for DOT's "acquisition" of their property only if DOT does not provide some access or if the access provided is so circuitous as to amount to a regulatory taking of the property. Consequently, when DOT provides alternate, albeit more circuitous, access to abutting lands from a controlled-access highway, no taking compensable pursuant to Wis. Stat. § 32.09(6)(b) occurs. It is axiomatic that where there is no compensable taking there will be no compensation. "[T]here must be a taking before there can be a claim for just compensation." Howell Plaza II, 92 Wis. 2d at 80; see also Surety Savings, 54 Wis. 2d at 444 ("Since appellants have always had access available to them, no property right was taken."). The legislature did not require DOT to either provide reasonable access to a frontage road or to acquire the access rights of abutting property owners when it acts pursuant to Wis. Stat. § 84.25. Thus, in controlled-access highway cases, provision of some access preserves the abutting property owner's controlled right of access to the property; no jury is required to determine whether the replacement access is reasonable because in controlled-access highway cases reasonableness is not the standard to apply to determine if compensation is due pursuant to Wis. Stat. § 32.09(6)(b).[19]

---

[19] We reiterate, however, that circuitous access amounting
(continued)

28

### 3. The Cases Hoffer Relies on Are Eminent Domain Cases, Not Police Power Cases

¶38 Hoffer attempts to distinguish Surety Savings and its predecessors, in which we held that abutting property owners could not recover diminution of value damages caused by changes in access to the highway, by arguing that those cases were abrogated by the decisions in National Auto Truckstops, 263 Wis. 2d 649, and Seefeldt v. DOT, 113 Wis. 2d 212, 336 N.W.2d 182 (Ct. App. 1983). We disagree.

¶39 Both cases are easily distinguishable. In the present case DOT was exercising the police power pursuant controlled-access highway statute, while in National Auto Truckstops and Seefeldt it was not. In National Auto Truckstops, the highway at issue (Highway 12) had not been designated "controlled-access." Thus, unlike the present case, the change in National Auto Truckstops' access "was not a 'duly authorized exercise of the police power.'" National Auto Truckstops, 263 Wis. 2d 649, ¶16 (emphasis in original). Consequently Wis. Stat. § 32.09(6)(b) applied and a jury determination of reasonableness was required

---

to a regulatory taking of the property may be compensable under Wis. Stat. § 32.10.

to determine the amount of compensation due, if any.[20] National Auto Truckstops is inapplicable to controlled-access highway cases because no compensation is due under Wis. Stat. § 32.09(6)(b) when DOT exercises the police power pursuant to Wis. Stat. § 84.25. In fact, the plaintiffs in National Auto Truckstops had conceded that if DOT had designated the highway "controlled-access" under Wis. Stat. § 84.25, no compensation would be due for the elimination of their direct access to Highway 12. See id., ¶8. Given that DOT did act pursuant to the controlled-access highway statute vis-à-vis Hoffer's property, National Auto Truckstops is unavailing to Hoffer.

¶40 Seefeldt is similarly unhelpful to Hoffer. Preliminarily, as a court of appeals case, Seefeldt could not alter the holding of Surety Savings. See Cook v. Cook, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case."). More to the point, Hoffer's reliance on Seefeldt is misplaced because,

---

[20] We note there is a tension between the language of Wis. Stat. § 32.09(6)(b) stating that in partial takings cases compensation is due for "[d]eprivation or restriction of existing right of access to highway from abutting land [unless restricted by an exercise of the police power]" and our holding in National Auto Truckstops that no compensation is due to an abutting property owner whose existing access has been restricted if reasonable access remains even when DOT has not exercised the police power. Reconciliation of the two is not necessary for the determination of this case and it was neither briefed nor argued, so we will decline to address the matter further.

like in National Auto Truckstops, Seefeldt did not implicate the controlled-access highway statute. In Seefeldt, DOT was acting pursuant to the freeway statute, Wis. Stat. § 84.295. Seefeldt, 113 Wis. 2d at 214-15. As noted above, the freeway statute contains language that the controlled-access highway statute does not: when DOT designates a preexisting highway as a freeway pursuant to Wis. Stat. § 84.295, "reasonable provision for public highway traffic service or access to abutting property shall be provided by means of frontage roads . . . or the right of access to or crossing of the public highway shall be acquired on behalf of the state." Wis. Stat. § 84.295(5) (emphasis added). This language in § 84.295(5) requires DOT to pay compensation pursuant to Wis. Stat. § 32.09 if it does not provide reasonable access to the freeway. In Seefeldt, DOT had neither built a frontage road nor acquired Seefeldt's access rights. Seefeldt, 113 Wis. 2d at 215-16. Consequently, a jury determination of reasonableness was required to assess how much, if any, compensation was due under Wis. Stat. § 32.09. Id. at 220-21.

¶41 Unlike in National Auto Truckstops or Seefeldt, in the present case, DOT exercised the police power pursuant to the controlled-access highway statute to replace Hoffer's direct access with circuitous access. As we have explained previously, Wis. Stat. § 32.09(6)(b) precludes compensation under that subsection for such exercises of the police power. National Auto Truckstops and Seefeldt did not alter the rule that the provision of alternate access precludes compensation pursuant to

31

Wis. Stat. § 32.09(6)(b) in controlled-access highway cases because neither case involved Wis. Stat. § 84.25. Likewise, they do not apply to this case.

## C. HOFFER WAS FULLY COMPENSATED FOR ALL DAMAGE CAUSED BY THE TAKING OF THE .72 ACRE

¶42 Hoffer has never articulated how the diminution of value caused by the loss of direct access to STH 19 relates to the compensation due for the taking of the .72 acre.[21] Our

---

[21] At the circuit court, Hoffer stated that "this is a partial taking eminent domain valuation case," mentioned that .72 of an acre was taken, and then argued that Hoffer was being "denied his constitutional right to be paid compensation by DOT for its taking of the subject property's access rights to STH #19." In its motions to that court, Hoffer refers only to "the taking" and never differentiates between the loss of access points and the .72 acre.

At the court of appeals, Hoffer again stated that "this is a partial taking eminent domain valuation case" and characterized the case as relating "to compensation for the taking of access rights." Hoffer stated that "DOT's STH #26 project necessitated a partial taking from the subject property" and claimed that elimination of direct access to STH 19 was one of the "aspects" of the taking. Hoffer argued that "[d]ifferent legal standards apply when there has not been a taking as opposed to when there has been a partial taking. . . . In the partial taking situation, in accordance with Wisconsin Statutes, section 32.09(6), the owner is entitled to compensation for damages . . . accruing to the owner's remaining property as a result of the taking." (Emphasis added).

In its brief to this court, Hoffer states that "[t]his is a partial taking eminent domain valuation case. . . .The issue in this case relates to compensation for the taking of access rights." Hoffer then states that "DOT's STH #26 project necessitated a partial taking from the subject property" and again characterized the termination of its direct access to STH 19 as an "aspect" of the taking.

formulation of Hoffer's argument is as follows:  the taking of the .72 acre and the termination of Hoffer's direct access to STH 19 are not two distinct acts, but rather a single "taking." According to Hoffer this single taking resulted in a diminution in value of its property for which it is owed compensation. Thus, (the argument runs), the elimination of its direct access is compensable under Wis. Stat. § 32.09(6)(b) even though Hoffer's direct access points were not on the land taken because some portion of Hoffer's land was taken by eminent domain.

¶43  Hoffer mistakenly styles its argument upon eminent domain when in actuality it prosecutes a separate and distinct claim based upon a challenge to DOT's exercise of the police power.[22] Hoffer is not challenging the reasonableness of the $90,000 valuation of the .72 acre of land taken pursuant to eminent domain; rather, it is challenging the kind of remedies available for the state's legitimate exercise of the police power. Hoffer attempts to characterize this argument as a matter of compensation, but it is really a matter of whether it had a property interest in direct access to the highway.

¶44  Our decisions in 118th Street and Jantz v. DOT, 63 Wis. 2d 404, 217 N.W.2d 266 (1974) illustrate why Hoffer's argument is unavailing.

---

[22] At oral argument, Hoffer stated it was only seeking compensation for loss of direct access to STH 19 and claimed that the difference between a taking under eminent domain and the police power was just "a label."

33

¶45  In 118th Street,[23] we held that "compensation for a taking cannot include damages for a lost point of access to a highway if the point of access was lost because of an act separate from the taking, such as the highway's relocation." 359 Wis. 2d 30, ¶46. There, we cited with approval Jantz, 63 Wis. 2d 404, a case almost directly analogous to Hoffer's case. See 118th Street, 359 Wis. 2d 30, ¶¶47-48. In Jantz, a restaurant owner sought compensation for diminution of value of his business after DOT took .38 acre of Jantz's land in order to expand the highway. DOT also relocated his access to the highway. Jantz, 63 Wis. 2d at 407-09. The .38 acre taken was separate from Jantz's highway access point. Id. We held that the diminution of value was properly excluded from the compensation for the partial taking "because those damages were not 'a consequence of the taking of .38 acre of land . . . .'" 118th Street, 359 Wis. 2d 30, ¶48 (quoting Jantz, 63 Wis. 2d at 412).

¶46  Here——just like the property owners in 118th Street and Jantz——Hoffer did not lose its direct access points to the highway because of the taking of the .72 acre of its land; rather, it lost its direct access points due to DOT's decision to restrict access to STH 19 as part of the STH 26 relocation

---

[23] The issue in 118th Street was whether diminution of value caused by the relocation of (and the LLC's consequent loss of direct access to) 118th Street should be included in the compensation for the taking of a temporary limited easement under Wis. Stat. § 32.09(6)(g) when the temporary limited easement was used to create additional access to the property.

project. Two separate acts occurred: (1) the taking of Hoffer's .72 acre, and (2) the elimination of Hoffer's direct access points to STH 19 pursuant to the police power. None of Hoffer's access points were on the land taken. Hoffer has consistently argued that the diminution of value to the property was caused by the loss of direct access to STH 19, not by the taking of the .72 acre. The diminution of value of Hoffer's property was not a consequence of the taking of the .72 acre, and accordingly those damages should not be included in the compensation for the .72 acre taken.

## V. CONCLUSION

¶47 First, we hold that Wis. Stat. § 84.25(3) authorizes DOT to change Hoffer's access to STH 19 in whatever way it deems "necessary or desirable." Such changes, including elimination of direct access points, are duly authorized exercises of the police power and are not compensable under Wis. Stat. § 32.09 as long as alternate access is given that does not deprive the abutting owner of all or substantially all beneficial use of the property. Second, we hold that when DOT changes an abutting property owner's access to a controlled-access highway but other access is given or exists, the abutting property owner is precluded from compensation pursuant to Wis. Stat. § 32.09(6)(b) as a matter of law and no jury determination of reasonableness is required. Reasonableness is the wrong standard to apply because the provision of some access preserves an abutting property owner's right of access to a controlled-access highway, and thus no taking compensable under Wis. Stat. § 32.09(6)(b)

35

occurs. Accordingly, Hoffer is precluded from compensation under Wis. Stat. § 32.09(6)(b) because alternate access to the property was provided by the Frohling Lane extension. We therefore affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶48  REBECCA G. BRADLEY, J., did not participate.

¶49 SHIRLEY S. ABRAHAMSON, J. *(concurring).* I conclude, as does Justice Gableman's lead opinion, that the elimination of direct access from Hoffer's property to State Highway 19 is a duly authorized exercise of the police power and is not compensable under Wis. Stat. § 32.09.[1]

¶50 I do not, however, join Justice Gableman's long, complex opinion.

¶51 The lead opinion is, for example, unnecessarily replete with discussion of when the elimination of direct access to a controlled access highway may support a claim for inverse condemnation,[2] "depriv[ing] the abutting owner of all or substantially all beneficial use of the property."[3]

¶52 The parties' references to inverse condemnation are cursory, not full or adversarial. As a result, I would not discuss inverse condemnation. "The rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral arguments." Maurin v. Hall, 2004 WI 100, ¶120, 274 Wis. 2d 28, 682 N.W.2d 866 (Abrahamson, C.J. & Crooks, J., concurring) overruled on other grounds by Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216.

¶53 For the reasons set forth, I do not join the lead opinion and I write separately.

---

[1] Only two justices join Justice Gableman's opinion.

[2] See, e.g., lead op., ¶¶6, 16-17, 20 n.12, 22, 33.

[3] Lead op., ¶6.

¶54 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

¶55 DAVID T. PROSSER, J. *(dissenting).* The petitioner in this case, Hoffer Properties, LLC (Hoffer), asks the following question: "What is the standard as to when DOT must pay compensation when it has eliminated an abutting property owner's direct access to an existing controlled-access state trunk highway?" Hoffer's answer is that the DOT must pay compensation when a jury finds that the replacement access provided by DOT is not reasonable.

¶56 The circuit court answered the question differently. It denied Hoffer a jury, concluding as a matter of law that no compensation is required if DOT provided any replacement access to the owner. This position is supported by the State in its brief: "Under Wisconsin law, damage resulting to property through the exercise of the police power is not compensable. There is no compensable taking when direct access to a controlled-access highway is denied as long as other access is given or otherwise exists."

¶57 The lead opinion concludes that "when DOT changes an abutting property owner's [direct] access to a controlled-access highway but other access is given or exists, the abutting property owner is precluded from compensation . . . as a matter of law and no jury determination of reasonableness is required." Lead op., ¶6. The lead opinion adds that "[r]easonableness is the wrong standard to apply" because the provision of "some" access preserves the property owner's right of access; thus, no taking occurs. Id.

1

¶58 The implications of this decision are stark. Henceforward, juries are precluded from ever finding that the alternative access provided to replace direct access to a controlled-access highway is unreasonable. By transforming a traditional fact question into a question of law, the court justifies depriving property owners of their statutory right to a jury trial and also bars circuit judges from ever finding that alternative access is not reasonable. According to the lead opinion, the only time the DOT is required to pay compensation to a property owner for eliminating direct access to a controlled-access highway is when the alternative access is so circuitous or so grossly inadequate that it deprives "the abutting owner of all or substantially all beneficial use of the property." Id., ¶20 n.12.

¶59 Because I disagree with the lead opinion's analysis and conclusions, I respectfully dissent.

I

¶60 State Trunk Highway 19 (STH 19) is a Wisconsin highway that stretches from a point near Mazomanie in Dane County to the point where it reaches STH 16 on the east side of Watertown in Jefferson County. Its total length is about 60 miles. On June 14, 2002, the DOT designated 13.76 miles of STH 19 as "controlled-access" highway, pursuant to Wis. Stat. § 84.25. The eastern end of the controlled-access segment in Jefferson County was Frohling Lane in the Town of Watertown, west of the City of Watertown.

¶61 Hoffer owned a 9.90-acre parcel of land abutting STH 19. This parcel is located south of STH 19. It is separated from Frohling Lane to its east by another parcel of land. When STH 19 became a "controlled-access" highway in 2002, Hoffer retained direct access to STH 19 by means of two driveways.

¶62 Then, as the lead opinion notes, in 2008 the DOT undertook a highway improvement project that relocated STH 26 so that it intersected with STH 19 just west of Hoffer's property. Lead op., ¶8. On December 29, 2008, as part of this project,

> DOT eliminated Hoffer's direct access to STH 19. DOT acquired through eminent domain both .72 acre of Hoffer's land as well as a temporary limited easement in order to create alternate access to Hoffer's property. DOT tendered to Hoffer $90,000 for this taking. Hoffer's existing direct access to STH 19 was replaced by extending Frohling Lane (a north-south roadway that intersects with STH 19) westward to Hoffer's property.

Id.

¶63 The DOT remedied its elimination of Hoffer's direct access by extending Frohling Lane to the west, through the entire width of Hoffer's property, so that Hoffer would have access to his house and business from the south after a new driveway was constructed, and the large parcel to the west of Hoffer's property would have access to STH 19 by way of this new road. The extension of Frohling Lane is now called Groth Lane.

¶64 "Hoffer's replacement access requires vehicles to travel roughly 1,000 feet to reach STH 19." Id. The owners/occupiers of the adjacent parcel to the west presumably must travel a considerably longer distance to reach STH 19.

3

¶65 To reach Hoffer's property, a person traveling east on STH 19 must turn right on Frohling Lane, drive to the end of the lane, turn right on Groth Lane, find the driveway for Hoffer's property, and then turn right into that driveway. Thus, as a practical matter, the distance to be travelled is not the only consideration in evaluating whether an alternative access is reasonable. Multiple factors may have to be taken into account.

¶66 On the facts here, I would have no difficulty in affirming a jury determination that DOT had provided reasonable access to Hoffer's property. The new access is no doubt inconvenient. It may require special signage. But it is not unreasonable in the totality of the circumstances.

¶67 My problem is not with the result in this case. My problem is with the law created in this case——approving the fact that a jury was never permitted to hear evidence and make a judgment. The lead opinion says in essence that there is no place for a jury in these situations——that the result would be the same if the new access required vehicles to travel 10,000 feet——closer to two miles——instead of 1,000 feet, to reach STH 19. The lead opinion says that "reasonableness" is the wrong standard to apply in such situations because whatever the DOT deems "necessary or desirable" cannot be found unreasonable as a matter of law. In my view, this is ill-advised new law.

II

¶68 This court has stated that "a person who owns property abutting a public street has a right of access, or right of ingress and egress, to and from the street. . . . [A]lthough

4

this right is subject to reasonable regulations in the public interest, it is a property right, the taking of which requires compensation." Nat'l Auto Truckstops, Inc. v. State, Dep't of Transp., 2003 WI 95, ¶39, 263 Wis. 2d 649, 665 N.W.2d 198 (quoting Narloch v. State, Dep't of Transp., 115 Wis. 2d 419, 430, 340 N.W.2d 542 (1983)). For this proposition, Narloch cited Schneider v. State, 51 Wis. 2d 458, 463, 187 N.W.2d 172 (1971). Schneider, in turn, had cited Carazalla v. State, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276 (1955), and Stefan Auto Body v. State Highway Commission, 21 Wis. 2d 363, 124 N.W.2d 319 (1963). The principle above is codified in Wis. Stat. § 32.09(6)(b).

¶69 Paragraph (b), however, also contains a qualification to the principle: compensation is required for "[d]eprivation or restriction of [an] existing right of access to [a] highway from abutting land, provided that nothing herein shall operate to restrict the power of the state . . . to deprive or restrict such access without compensation under any duly authorized exercise of the police power." (Emphasis added.) Deprivations and restrictions pursuant to Wis. Stat. § 84.25 are exercises of the police power.

¶70 Put bluntly, the state does not have to pay compensation for depriving a landowner of direct access to a controlled-access highway. It does not follow, however, that reliance on the police power precludes altogether any need for compensation. Although paragraph (b) does not say so, it is universally agreed that the deprivation of direct access cannot

5

leave the property landlocked. <u>See</u> <u>Carazalla</u>, 269 Wis. at 608b. <u>Some</u> access must be provided to avoid the necessity of compensation. The issue presented by this opinion is whether <u>no</u> compensation is required if DOT provides <u>any</u> alternative access——even if that alternative access is plainly unreasonable——so long as the property owner cannot meet the requirements for inverse condemnation.

¶71 The State's position is uncompromising: "[D]amage resulting to property through the exercise of the police power is not compensable. There is no compensable taking when direct access to a controlled-access highway is denied as long as other access is given or otherwise exists." The lead opinion adopts this position.

¶72 Other judges have been less absolute. For example, Justice Oliver Wendell Holmes, writing for the Supreme Judicial Court of Massachusetts, stated:

> We assume that one of the uses of the convenient phrase "police power" is to justify those small diminutions of property rights which, although within the letter of constitutional protection, are necessarily incident to the free play of the machinery of government. It may be that the extent to which such diminutions are lawful without compensation is larger when the harm is inflicted only as incident to some general requirement of public welfare. But, whether the last-mentioned element enters into the problem or not, <u>the question is one of degree, and sooner or later we reach the point at which the constitution applies and forbids physical appropriation and legal restrictions alike, unless they are paid for</u>.

<u>Bent v. Emery</u>, 53 N.E. 910, 911 (Mass. 1899) (emphasis added).

¶73 Hoffer persuasively demonstrates that the spirit conveyed by Justice Holmes has run through Wisconsin law in cases involving controlled-access highways. Hoffer cites Schneider, 51 Wis. 2d 458; Surety Savings & Loan Ass'n v. State (Division of Highways), 54 Wis. 2d 438, 195 N.W.2d 464 (1972); Jantz v. State (Division of Highways), 63 Wis. 2d 404, 217 N.W.2d 266 (1974); and Seefeldt v. State, Department of Transportation, 113 Wis. 2d 212, 336 N.W.2d 182 (Ct. App. 1983). These cases were preceded by Carazalla, 269 Wis. 593, and Nick v. State Highway Commission, 13 Wis. 2d 511, 109 N.W.2d 71, 111 N.W.2d 95 (1961). These cases will be discussed in chronological order.

Carazalla v. State (1955)

¶74 In Carazalla, Justice George Currie provided a broad statement of the law:

> The general rule is that damage resulting to property through the exercise of the police power is not compensable. We consider the following statement appearing in 11 McQuillin, Mun. Corp. (3d ed.), p. 319, sec. 32.27, to be particularly pertinent to the facts of the instant case:

> "The question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable."

> Limited-access highways and their effect upon the rights of abutting property owners to compensation are the subject of three excellent law-review articles in which are cited the court decisions bearing on the question. The authors of all three articles agree

7

that the limiting of access to a public highway through governmental action results from the exercise of the police power, and that in the case of a newly laid out or relocated highway, where no prior right of access existed on the part of abutting landowners, such abutting landowners are not entitled to compensation. On the other hand, the authorities cited in these articles hold that where an existing highway is converted into a limited-access highway with a complete blocking of all access from the land of the abutting owner, there results the taking of the pre-existing easement of access for which compensation must be made through eminent domain. However, if the abutting landowner's access to the highway is merely made more circuitous, no compensation should be paid according to the authors of these articles . . . . In the instant case the plaintiff landowners still have their right of access to old U.S. Highway 51 which has not been closed off.

Carazalla, 269 Wis. at 608a-608b (emphasis added; footnotes omitted). In my view, Carazalla implied that alternative access that is merely "more circuitous" is reasonable. It does not address what might be unreasonable.

#### Nick v. State Highway Commission (1961)

¶75 Petitioner acquired property in Waukesha County abutting STH 30, a controlled access highway, also known as Bluemound Road. There had never been driveways from the parcel directly onto Highway 30. The petitioner was denied access to Highway 30. Justice Timothy Brown wrote:

An impairment of the use of property by the exercise of police power, where the property itself is not taken by the state, does not entitle the owner of such property to a right to compensation. The law on this subject remains as we stated it in State ex rel. Carter v. Harper (1923), 182 Wis. 148, 153, 196 N.W. 451,——a zoning case,

". . . incidental damage to property resulting from governmental activities, or laws passed in the promotion of the public welfare, is not considered a

8

taking of the property for which compensation must be made."

> The situation here bears a close analogy to the enactment and the effect of a zoning statute.
>
> . . . .
>
> Neither in 1951 nor thereafter . . . did the state, through its highway commission, take any portion of Reinders' land. No doubt the control of his access to Highway 30 impaired the value of his land, the impairment increasing as any part of the land lay distant from Calhoun road, but at the time of the commission's declaration Reinders still had access in every part of his land to Highway 30 via use of Calhoun road. His access to the highway is made more circuitous but no part of Reinders' land was taken. The diminution of its value due to the exercise by the state of its police power in making Highway 30 a controlled-access highway is not recoverable.

Nick, 13 Wis. 2d at 514-15 (first alteration in original; emphasis added).

¶76 Justice George Currie concurred, recognizing that Wisconsin's less-generous position on compensation appeared to represent a minority view:

> Courts which hold that compensation must be paid to the abutting landowner in all cases where all direct-access rights to an existing highway are barred by statute, even though indirect access exists by means of service roads or connecting highways, consider that access rights constitute property distinct and apart from the land to which they appertain. The writer of this opinion believes this to be erroneous and that highway-access rights are but one of a bundle of rights which appertain to a parcel of real estate.
>
> . . . If by reason of providing a frontage road, or the existence of a previously existing connecting highway, there is reasonable access to the controlled-access highway, no taking requiring compensation should be held to have occurred.

Id. at 517-18 (Currie, J., concurring) (emphasis added).

9

¶77 In Nick, the court approved "incidental damage" to property by exercise of the police power. In addition, "more circuitous" access to a controlled-access highway is very likely to satisfy Justice Currie's "reasonable access." The opinion implicitly recognizes but does not define "unreasonable" access.

Schneider v. State (1971)

¶78 Justice Connor T. Hansen wrote:

The creation of a controlled-access highway is a proper exercise of the police power. This court has held that the exercise of the police power allows injury to property without compensation. Where access to a highway is controlled under the exercise of the police power and reasonable access remains, no compensation is required.

. . . The right of access or of ingress and egress of an abutting property owner is a property right the taking of which requires compensation. However, there was no issue in this case concerning the adequacy of access from the Schneider property by the frontage road. Since the state provided reasonable access to and from the Schneider property by a frontage road there was no taking requiring compensation.

. . . .

. . . Deprivation of direct access to a highway does not constitute a taking of property provided reasonable access remains.

Schneider, 51 Wis. 2d at 462-63 (emphasis added; citations omitted).

¶79 The court in Schneider used the phrase "reasonable access" five times in stating the law, implying that "unreasonable access" does not satisfy the law.

Surety Savings & Loan Ass'n v. State (Division of Highways) (1972)

10

¶80 Justice Leo Hanley wrote for the court:

The sole issue presented on this appeal is whether appellants should be compensated for damages suffered because of the termination of their right to direct access to U.S. Highway 41. . . . [I]njury to property resulting from the exercise of the police power of the state does not necessitate compensation.

. . . The designation of a highway as a controlled-access highway is an exercise of the police power.

This court has frequently held . . . that there is no compensable taking when direct access to a controlled-access highway is denied, where other access is given or otherwise exists. Since the department in this case granted reasonable access to a service road when it terminated direct access to the highway, under the foregoing rules of law, the appellants are not entitled to compensation for the termination of their direct access.

. . . There is no suggestion that the frontage road access furnished is inadequate or unreasonable.

. . . .

We conclude that appellants have no right to be compensated, under the provisions of sec. 32.09(6)(b), Stats., merely because access to their property has been made more circuitous.

Surety Savings, 54 Wis. 2d at 442-44, 446 (emphasis added; citations omitted).

¶81 It should be noted that the makeup of the Surety Savings court was exactly the same as the makeup of the Schneider court and that the Surety Savings opinion cites Carazalla, Nick, and Schneider with approval. Where a property owner suggests that alternative access is not reasonable, the court cannot ignore the issue.

Jantz v. State (Division of Highways) (1974)

11

¶82 In _Jantz_ Justice Robert W. Hansen quoted _Schneider v. State_ at length, including this statement: "It [_Schneider_] repeats that the '. . . [d]eprivation of direct access to a highway does not constitute a taking of property provided reasonable access remains. . . .'" _Jantz_, 63 Wis. 2d at 410 (all alterations but first in original) (quoting _Schneider_, 51 Wis. 2d at 463). The _Jantz_ majority again invoked the "reasonable access" test two years after the _Surety Savings_ case.

_Seefeldt v. State, Department of Transportation_ (1983)

¶83 Judge Clair Voss of the court of appeals wrote:

Initially, appellants had access to U.S. Highway 41. When U.S. Highway 41 was declared a controlled-access highway, the appellants' access was reduced to reasonable access. Now, the appellants allege that even this reasonable access is being taken away as the result of the taking of appellants' real estate in conjunction with the upgrading of U.S. Highway 41 to freeway status.

In general terms, the issue is whether the appellants have suffered a loss. However, the real issue is whether the state can use a two-stage approach to deprive landowners of their reasonable access to a highway without compensating them for this loss. We find that the appellants have suffered a loss because of this two-stage taking and, thus, should be compensated.

Seefeldt, 113 Wis. 2d at 213-14 (emphasis added).[1]

¶84 These cases may be summed up as follows: There is normally a distinction between an exercise of police power and eminent domain. The general rule is that damage resulting to property through an exercise of police power is not compensable. This general rule will prevail in any case involving a property owner's loss of direct access to a controlled-access highway as long as some reasonable access remains. This principle is found in Nick, Schneider, Surety Savings, Jantz, and Seefeldt. It is either stated directly or implied by reference to facts that demonstrate reasonable alternative access. The fact that alternative access is "circuitous" or "more circuitous" than before the deprivation does not render that access unreasonable per se. Something more deleterious is required. Although this court has never held that a particular exercise of the police

---

[1] Recently, the Supreme Court of South Dakota evaluated a similar two-stage taking situation in Hall v. State ex rel. South Dakota Department of Transportation, 806 N.W.2d 217 (S.D. 2011). Property owners sought compensation after the state removed an interstate highway interchange adjacent to their property; a truck stop they operated on the property ceased operations within weeks of the interchange closure. Hall, 806 N.W.2d at 220-21. The property owners argued that they had relied upon the presence of the interchange to operate their business and that, when the state originally condemned a portion of their property to build the interstate highway, the appraisal used to calculate just compensation had assumed "that 'the presence of the interchange' would be a 'significant' and 'special benefit' to the Property." Id. at 220. Agreeing with that reliance argument, the court concluded that "an abutting property owner may acquire a compensable right of access to a controlled-access highway when access is designated and used to settle or mitigate damages in a condemnation, but that access is later removed." Id. at 226.

13

power left a property owner with only unreasonable access to his or her property, the broad scope of reasonableness does not preclude a <u>finding</u> of unreasonableness in specific circumstances.

¶85 This summary of the case law is simply inconsistent with the lead opinion. Consequently, either this summary is wrong or the lead opinion is making new law. I believe the lead opinion is making new law.

III

¶86 The lead opinion appears a bit uncomfortable with its decision to abandon "reasonable" access. It tries to hide the severity of its ruling by offering the fig leaf of inverse condemnation. This remedy is simply not adequate.

¶87 Generally, a property owner who brings an inverse condemnation claim under Wis. Stat. § 32.10 can recover compensation by demonstrating that a restriction on use amounts to a regulatory taking that "den[ies] the property owner all or substantially all practical uses of a property." <u>Brenner v. New Richmond Reg'l Airport Comm'n</u>, 2012 WI 98, ¶45, 343 Wis. 2d 320, 816 N.W.2d 291 (citing <u>Eberle v. Dane Cnty. Bd. of Adjustment</u>, 227 Wis. 2d 609, 622, 595 N.W.2d 730 (1999)); <u>see</u> <u>Just v. Marinette Cnty.</u>, 56 Wis. 2d 7, 15, 201 N.W.2d 761 (1972) ("Whether a taking has occurred depends upon whether 'the restriction practically or substantially renders the land useless for all reasonable purposes.'" (quoting <u>Buhler v. Racine Cnty.</u>, 33 Wis. 2d 137, 143, 146 N.W.2d 403 (1966))).

14

¶88 But even property owners burdened by plainly unreasonable access will struggle to demonstrate that the remaining access renders the property substantially useless for all reasonable purposes. No matter how outrageously inconvenient a means of access might be, the property owner will still retain some ability to access the property. Unreasonably inconvenient access does not necessarily mean that a property is substantially useless. A use based standard for inverse condemnation is fundamentally incompatible with a claim of unreasonable access because any access at all likely ensures that the property owner retains the ability to use the property.

¶89 In my view, whether alternative access is reasonable or unreasonable is a matter of degree, the determination of which should be submitted to a jury. "[W]hether a change in access is 'reasonable' . . . is a question for a jury." Nat'l Auto Truckstops, 263 Wis. 2d 649, ¶21; Narloch, 115 Wis. 2d at 433-34; Bear v. Kenosha Cnty, 22 Wis. 2d 92, 96, 125 N.W.2d 375 (1963).

¶90 The right to trial by jury in these cases is embedded in Wis. Stat. § 32.05, especially in subsection (10) paragraph (a), subsection (11), and subsection (12). Trial by jury serves as a vital check by an impartial fact finder on the exercise of government power.

¶91 There is a great chasm between reasonable access and access so deficient that it constitutes inverse condemnation. The lead opinion permits government officials to push property owners into that chasm without compensation. That is contrary

15

to the spirit with which our statutes ought to be administered. It is ominous when the check of trial by jury disappears, as well.

¶92  For the reasons stated, I respectfully dissent.